319 So.2d 617 (1975)
Amy JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. X-297.
District Court of Appeal of Florida, First District.
October 10, 1975.
Louis O. Frost, Jr., Public Defender, and Steven E. Rohan, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., Andrew W. Lindsey, and Raymond L. Marky, Asst. Attys. Gen., for appellee.
McCORD, Judge.
Appellant was adjudged guilty of possession of a controlled substance and she appeals from the judgment and sentence. She was arrested initially for violation of Jacksonville Municipal Ordinance 330.116.5 by "failing to identify herself to a city police officer." Upon arrest she was placed in the officer's patrol car and transported to the city jail where she was searched by a female correctional officer. A pistol and seven packets of drugs were found on her person. Appellant contends that the search was not conducted as an incident to a lawful arrest and that it was, therefore, invalid; that the trial court erred in not granting her motion to suppress the evidence. In support of the arrest, appellee relies upon the following pertinent portions of the aforesaid ordinance:
"(a) Right to Detain and Inquire. Any law enforcement officer of the City having reasonable cause to do so may, in the manner hereinafter described, detain any person observed by him in a public place or on private property evidently not his own to inquire into such person's identity.
(b) Reasonable Cause. An officer shall have reasonable cause to detain and inquire *618 when he has reasonable grounds to believe that the person so observed may recently have committed or may imminently commit an offense or any act injurious to the person or property of another in the immediate vicinity, and when one or more of the following circumstances exist:
(1) * * *
(2) * * *
(3) * * *
(4) * * *
(5) the person observed attempts to avoid or escape the approaching officer." (Emphasis supplied)
As shown by the word "and" which we have underlined in the quoted portion of the above ordinance, a police officer must have both reasonable cause to detain and inquire as above defined and (under the contention in the present case) the person observed must attempt to avoid or escape the approaching officer.
Here, the evidence presented by the state shows that two Jacksonville police officers on routine patrol at about 9 p.m. on August 25, 1974, had parked their car and were making a walking routine check of establishments in an area which one of the officers described as one of the highest crime and drug traffic centers in Jacksonville. As further described by the officer, as they walked along and rounded a corner, they observed appellant sitting on the fender of an automobile with a man who "was looking straight at them." Appellant and the man were talking and she then jumped down from the automobile fender and proceeded to walk briskly in the other direction. This occurred on a public sidewalk or street in the City of Jacksonville. The officer considered this to be of a suspicious nature, so he called to her and told her to stop. When she did not stop, he briskly hurried in front of her and asked her for identification. She did not respond; he asked her for identification again and she said that she didn't have to show him anything. He informed her that she was required by municipal ordinance to show him identification when requested by him and he then placed her under arrest for failure to identify herself and transported her to the Duval County Jail. At the jail she gave her name which was found to be correct from a later check, but she did not give any written identification. Also, at the jail, a female correctional officer searched appellant and found the pistol and drugs.
The Jacksonville ordinance also provides as follows as to the manner of detention and inquiry:
"(c) Manner of Detention and Inquiry.
(1) The officer shall detain the person so observed at the time and place where he is found and, first identifying himself and the cause for the detention and inquiry, the officer shall ask the person detained to identify himself by name and address and may ask him to produce written identification reasonably confirming his identity.
(2) The officer shall release the detained person if he orally identifies himself by name and address and produces written identification reasonably confirming his identity. The officer may request that the detained person forthwith leave the immediate vicinity if the detained person fails to produce written identification reasonably confirming his identity and, in the circumstances set forth in paragraph (b) hereof, the officer has reasonable grounds to believe that such person may imminently commit an offense or any act injurious to the person or property of another in the immediate vicinity.
(3) Any person (i) who declines to identify himself orally by name and address or (ii) who declines or fails to leave the immediate vicinity at the officer's request, after failing to produce written identification reasonably confirming *619 his identity, may be further detained by the officer in the officer's patrol car or at any identification headquarters designated by the Sheriff. During his detention, such person may be further interrogated, photographed and fingerprinted for identification purposes, and an investigation may be made as to whether any law enforcement authority seeks custody of such person for an alleged criminal offense. Unless there is probable cause to arrest any person detained as authorized by this subparagraph, such person shall be released upon the expiration of three hours of detention or when the foregoing purposes of identification are accomplished, whichever shall first occur. Thereupon, at the election of the detained person, he shall be transported by an officer to the place where he was first detained. The officer shall make a full written report of any detention made under this subparagraph.
(4) The officer may search any detained person for firearms or other dangerous instruments who the officer reasonably believes, under the circumstances then existing, may attempt to injure the officer in the course of the detention."
There is no evidence to support reasonable grounds for the officers to believe at the time they first observed appellant that she (in the words of the ordinance) "may recently have committed or may imminently commit an offense or any act injurious to the person or property of another in the immediate vicinity." The officers only testified that her above related actions were suspicious. Thus, the first element required by the ordinance was not satisfied. In absence of the first element, we cannot say that the mere fact that appellant and the man with whom she was talking terminated their conversation, and she walked briskly in the opposite direction from the officers was sufficient ground upon which to detain her and then arrest her for "failing to identify herself." A ruling otherwise would mean that any citizen who terminated a conversation with another on a public sidewalk at the time a police officer happened to be approaching and who then walked briskly in the opposite direction from the approach of the police officer, would be subject to detention. The ordinance by its terms does not authorize detention under such circumstances. In State v. Ecker, Fla., 311 So.2d 104, the Florida Supreme Court, in upholding the constitutionality of the state's "loitering" statute, Section 856.021, Florida Statutes (1973), stated:
"We hold that Section 856.021, Florida Statutes, is not vague or overbroad and specifically the words `under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity' means those circumstances where peace and order are threatened or where the safety of persons or property is jeopardized. In justifying an arrest for this offense, we adopt the words of the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968): `... the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' a finding that a breach of the peace is imminent or the public safety is threatened.
Self Incrimination
It is contended that the statute is unconstitutional because for all practical purposes it requires an accused to `identify himself and explain his presence and conduct.' The issue of identification and the issue of explanation are separate and distinct. Under circumstances where the public safety is threatened, we find no constitutional violation in requiring credible and reliable identification.
* * * * * *
The defendants contend that this statute authorizes police officers to use their *620 unbridled discretion to arrest whomever they please. We disagree. This statute only authorizes an arrest where the person loitering or prowling does so under circumstances which threaten a breach of the peace or the public safety. While the statute might be unconstitutionally applied in certain situations, this is no ground for finding the statute itself unconstitutional."
The issue of the constitutionality of the Jacksonville ordinance has not been raised in this case, but it can readily be seen that the first element of the Jacksonville ordinance (reasonable grounds to believe that the person observed may have committed or may imminently commit an offense, etc.) must be present for an officer to stop a citizen on the public street and demand identification.
In addition, even if the officer had authority to stop appellant and demand identification, he had no authority to arrest her for "failure to identify." The ordinance does not make "failure to identify" a crime. Having arrested appellant for a non-existent crime, there could be no valid search as an incident to a lawful arrest.
While the municipal ordinance states that the officer may search any detained person for firearms or other dangerous instruments who the officer reasonably believes, under the circumstances then existing, may attempt to injure him in the course of the detention, the officer testified that he had no reason to believe appellant might attempt to injure him. Thus, there was no basis for the search under the provisions of the ordinance even if there had been a legal basis for the detention.
The judgment and sentence and the order of the trial judge denying appellant's motion to suppress the evidence are reversed.
RAWLS, J., concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge (dissenting).
I respectfully dissent. It is pertinent to note that the constitutionality of the ordinance of the City of Jacksonville quoted and discussed in the majority opinion is not here under attack. In my view, the actions of the appellant in the area known to be a "high-crime area" under the circumstances recited in the majority opinion were sufficient justification, indeed required, the actions taken by the police officer. I would affirm.