GLICKSTEIN, Judge,
dissenting:
I must respectfully dissent.
Appellant was charged by information with possession of marijuana in excess of five grams. His pretrial motion to suppress was denied whereupon he pled nolo conten-dere, specifically reserving his right to appeal the trial court’s denial of his motion.
Officer William Dawson of the Delray Beach Police Department was the only witness to testify at the hearing on the motion to suppress. The pertinent part of the testimony is as follows:
A Another police officer, Officer Ross Licata, had requested assistance at the rear of 633 West Atlantic Avenue in the alleyway. I proceeded to that area and Officer Licata advised me that he had observed a group of black males gathered in a circle or bunched up at the corner of the building in front of Ideal Recreation, 633.
Q Are you familiar with that area of Delray Beach?
A Yes, sir. .
Q What kind of an area is it?
A There is a very high crime rate.
******
Q What specifically did Officer Licata tell you he had seen?
A He thought that there was gambling, possibly gambling and narcotics, marijuana smoking going on in that group and that there was also some type of gambling.
******
Q Then what happened, sir, after you formulated a plan?
A Officer Licata contacted me by way of radio and stated to me that he was now approaching a black male at that time and we started into the alleyway coming south to approach from the opposite side of him.
******
A As I started up that alleyway Officer Licata came on the radio and in an excited tome of voice said they are running, breaking away, and we started to run in the alleyway and the subject came at a full pace, running at a full pace towards us down the alleyway, and he ran almost into me. Before he realized it we were there in the alleyway about three-quarters of the way into it.
At that time I told him to “Hold it right there, police officers,” and I turned my flashlight on.
*252 On cross-examination the following transpired:
Q So the only thing ypu knew before that happened was that Officer Licata had a suspicion that there was some type of illegal activity going on?
A Yes.
Q Isn’t it true that he never specifically gave you any indication of what it was that he suspected?
A He suspected some type of gambling and the use of illegal narcotics with the group of black males who had gathered on that corner.
* * * * * *
A He explained when he met me that he thought there was gambling going on or that they were using some type of narcotics.
Q Wasn’t your answer at the deposition, “Well, he wasn’t sure.”?
A Well, he wasn’t sure which one it was. He wasn’t sure whether it was gambling or exactly what they were doing, but they were definitely doing something.
Q So you just had a definite suspicion, you couldn’t tell what it was?
A Right.
Q And you had the same suspicion on secondhand knowledge?
A Yes.
Q So the fact is you didn’t have any knowledge of any specific crime being committed by any specific person?
A I didn’t know if there was a specific crime being committed, I felt they were committing some kind of crime against the State of Florida, but I can’t say yes, it was this, or yes it was that. I can’t say.
Q The first time you saw him is when he was coming up the alley because you were running then?
A Right.
Q At that time you didn’t have specific knowledge or suspicion, just suspicion that he was breaking one of the narcotics laws?
A He was part of the group and he was running.
Q You didn’t see — ?
A Officer Licata said, “They were running, breaking up,” and as we started into the alley Officer Bombacie assumed he was one of the subjects in that group.
Q You assumed that?
A I didn’t see him in the group, no, sir.
Q Okay. So you suspected him of being part of the group and involved in something illegal because he was running?
A Yes.
Q But still at that point you didn’t have any idea what it may be?
A Not exactly, I suspected it was gambling or stolen property, something of that nature.
Officer Licata neither testified at the hearing on the motion nor expressed to Officer Dawson any of the facts that led him to believe some criminal activity was afoot. At best, then, we have “a group of black males gathered in a circle or bunched up at the corner of the building.” I fail to see how these scant facts alone, in the words of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), are specific and articulable to justify a detention.
Recently in Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980), we held that detention was not justified when a suspect walked briskly away from a parked vehicle after observing the police. Similarly, the First District held it was improper to stop a person in a high crime area when he, after spotting police officers, jumped down from an automobile fender and walked briskly away. Jackson v. State, 319 So.2d 617 (Fla. 1st DCA 1975). A stop was also invalidated by the court in Lower v. State, 348 So.2d 410 (Fla. 2d DCA 1977), wherein a vehicle was stopped after pulling away after midnight at a faster than average speed from its parking space in a parking lot of a business area when all of the businesses in the area were closed. These three cases present a stronger argument for a “founded” suspicion of crime than does the instant *253 situation, yet each was found insufficient to justify a detention.
It is not my intent to eliminate common sense from cases involving the detection of crime. But on the other hand I must preserve the right of persons to be free from unreasonable searches and seizures. Sub judice the state had the burden to prove the detention was justified. In the absence of specific and articulable facts[1] there was no basis from which the trial court could have properly concluded that the detaining officers had founded suspicion that appellant “has committed, is committing, or is about to commit” a crime. Section 901.151, Florida Statutes (1979). See State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978).
Accordingly, I would reverse.

. For example, Officer Licata, had he testified, might have been able to explain in detail various gestures made by members of the group or possible contraband that he saw that led him to suspect narcotics, marijuana smoking and gambling.