470 So.2d 869 (1985)
STATE of Florida, Appellant,
v.
Rickey Eugene PARRISH, Appellee.
No. AZ-132.
District Court of Appeal of Florida, First District,
June 18, 1985.
John W. Tiedemann, Asst. Atty. Gen., for appellant.
John E. Carr, Pensacola, for appellee.
PEARSON, TILLMAN (Ret.), Associate Judge.
The state appeals an order granting defendant/appellee's motion to suppress certain incriminating evidence seized from him at his arrest on the ground that the evidence was the product of a warrantless arrest for which probable cause was lacking. *870 There is a cross appeal by defendant which is without merit and will be briefly dealt with at the conclusion of this opinion.
Officer Jerry Smith of the Pensacola Police Department received over his police radio a BOLO ("be on the lookout") for two white males in a silver Camaro who had just robbed Godwin's Drug Store. Officer Smith thought that he also heard a description of the suspects' clothing but he was not certain. He responded to the call and arrived at Godwin's three minutes later. Immediately upon arrival, he received a radio dispatch indicating that a customs agent approximately 10 blocks away had been shot at by two white males. As a result of this information, Smith proceeded east on Cervantes Street where he was flagged down by John Wiggins, an unknown black male. Smith stopped and Wiggins stated he had seen two white males hop a fence and run across a yard toward the Friendly Auto Parts store. Officer Smith did not recall Wiggins stating that the two males were acting suspiciously or had attempted to hide but Wiggins thinks he may have stated that the men attempted to hide when they heard a siren. There was no discussion of an automobile or of what the two men looked like. Smith and Wiggins then ran on foot toward the Friendly Auto Parts store. Approaching the store, they noticed a white male standing in front of the store. The white male was just standing there, not doing anything suspicious. Wiggins indicated to Smith that that was one of the white males he had seen running and officer Smith immediately pulled out his gun, pointed it at the white male and ordered the white male to lie spread-eagle on the ground. At that point, officer Smith received backup help and the white male (appellee) was patted down, handcuffed and arrested. There was no questioning of appellee prior to arrest.
The disposition of the motion to suppress turned primarily on two factual issues for which there was conflicting evidence. As indicated earlier, officer Smith testified that he thought he remembered a description of the suspects' clothing being given in the initial BOLO. This testimony conflicted with his written report, his previous deposition and depositions taken of several other officers. Officer Smith could not testify as to what the description was but did testify that at the time of the arrest, he was under the impression that appellee fit the description. There was also testimony from Mr. Odom, the individual who was robbed at Godwin's Drugs, to the effect that he reported to the police a description of the clothing worn by appellee's codefendant but did not report a description of the clothing worn by appellee.
The second disputed factual issue was whether or not John Wiggins indicated to officer Smith prior to the arrest that Wiggins had observed the two white males acting suspiciously. The testimony given by Wiggins was contradictory in and of itself and also conflicted with the testimony given by officer Smith that Wiggins did not make any such indication.
The trial judge granted appellee's motion to suppress and stated orally into the record reasons for his order. They are in part as follows:
Given those two circumstances and the fact that  the facts that a robbery apparently had occurred at Godwin's; That the victim, Mr. Odom, had chased two individuals  or followed two individuals and saw them in a silver gray Camaro; that Officer Smith eventually arrived on the scene of the robbery and then turned around and went east on Cervantes. I believe that was the recollection of the facts  or my recollection of the facts. That the officer was flagged down on Cervantes Street; that it was a predominantly black neighborhood; that Mr. Wiggins saw two white gentlemen jump the fence and proceeded up the street; and this was told to Officer Smith; that Officer Smith and Mr. Wiggins approached a white male standing outside of an auto parts store owned and operated by a white gentleman; that immediately the individual was put down on the ground and other officers arrived and he *871 was immediately arrested. It is my recollection that no statements or questions were given or asked at that particular time; that no mention of the Camaro as far as anyone seeing these men exit that Camaro was given to Officer Smith by Mr. Wiggins or this other lady prior to the arrest.
Based upon that factual situation, based upon the court having difficulty as far as the recollection of Officer Smith as to the clothing description and the specific question of Mr. Wiggins, the court is going to find that the motion to suppress should be granted; that there was an illegal arrest at that particular time not based upon probable cause. The court feels that the appropriate action of the officers at that time should have been to basically investigate further  detain him pending a further investigation as opposed to immediately arresting them at that time for an armed robbery charge.
The ruling of the trial court on a motion to suppress, when it comes to the appellate court, is clothed with a presumption of correctness, and the appellate court will interpret the evidence and reasonable inferences derived therefrom in a manner most favorable to the trial court's ruling. McNamara v. State, 357 So.2d 410 (Fla. 1978). We find that there is sufficient evidence to support the trial court's ruling and affirm.
Appellee's motion for pretrial release pending state's appeal was properly denied under the discretion granted. See State ex rel Harrington v. Genung, 300 So.2d 271 (Fla. 2nd DCA 1974); State v. Shipman, 360 So.2d 782 (Fla. 4th DCA 1978).
Accordingly, the order granting defendant's motion to suppress is affirmed and order denying defendant's motion for pretrial release is affirmed.
SHIVERS, J., concurs.
BOOTH, J., dissents.
BOOTH, Judge, dissenting:
I would reverse and hold that the state met its burden to prove probable cause for the arrest. The record shows that Mr. Wiggins, a disinterested black bystander in a black neighborhood, flagged the officer down and reported that he saw two white men acting suspiciously, specifically running at the sound of the siren and jumping a fence. Wiggins' testimony was confused during the questioning by the attorneys for the State and for the defendant as to when he told the officer that defendant was wearing a green shirt and involved with his companion in other suspicious furtive actions. The trial court went off on that point and found the matter not clear. However, Mr. Wiggins did not vary in his testimony that he ran with the officer to the Friendly Auto Parts store and that, prior to the arrest, he did "point the fellow out."[1] In view of this, it is unnecessary that the officer also have a more complete description of clothing at the time of the arrest. The officer was performing his duty in receiving and acting on the report of a citizen who flagged down the vehicle. Likewise, the fact that the earlier "bolo" on *872 the robbery contained no description of clothing is not material to the question because, independent of that, the citizen/informer identified defendant to the officer and, in quick pursuit, pointed him out to the officer face-to-face immediately prior to the arrest.
NOTES
[1] Record, Vol. 1, p. 38-40:

Q. [on redirect examination] Did you walk with Officer Smith to the Friendly Auto Parts store?
A. [Mr. Wiggins] I sure did.
... .
Q. About how many minutes did it take you to get up there to the store?
A. It must have been about two or three minutes because when it pulled up there and stopped me and we both went on down there, and the one [suspect] what I showed him, he was fixing to use the phone. And when he seen the officer, he put the phone down and he walked off.
Q. During the time that you and the officer went up to the Friendly Auto Parts store, were you talking to him?
A. No, because we was running down there. We was trying to get him before he got away. I had seen him [suspect] down by the store and I went down there to show him [officer] which one I had seen. And the other one, I don't know where he went... .
... .
Q. [A]fter you went up to the Friendly Auto Parts store, did you point the fellow out  one of the fellows that you saw?
A. That's right, yes.