511 So.2d 698 (1987)
Joseph King COBB, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-2025.
District Court of Appeal of Florida, Third District.
August 18, 1987.
*699 Bennett H. Brummer, Public Defender, and Charles I. Poole, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
It is commonly held that flight at the sight of an approaching police officer is a suspicious circumstance which, when added to other suspicious circumstances, may justify the belief that the defendant was engaged in criminal activity and, therefore, an investigatory stop. See, e.g., A.E.R. v. State, 464 So.2d 152 (Fla. 2d DCA 1985) (trespassing complaint plus efforts to elude officers); State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980) (observation of defendant peering from an alley into first floor window of an apartment plus flight); Isham v. State, 369 So.2d 103 (Fla. 4th DCA 1979) (informant's detailed tip concerning an impending drug sale by the defendant plus flight); Gibson v. State, 368 So.2d 667 (Fla. 3d DCA 1979) (defendant's presence in front of alley in deserted area at early morning hour plus flight). Nevertheless, flight, standing alone, will not justify either such a belief or stop.[1]See Wilson v. State, 433 So.2d 1301 (Fla. 2d DCA 1983); R.B. v. State, 429 So.2d 815 (Fla. 2d DCA 1983); McClain v. State, 408 So.2d 721 (Fla. 1st DCA 1982); Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980); Jackson v. State, 319 So.2d 617 (Fla. 1st DCA 1975). See also W. LaFave, Search and Seizure § 9.3(c), at 448-51 (2d ed. 1987). That the defendant in the present case ran when he saw the approaching police officer makes his conduct no more suspicious than that of a defendant who walks "briskly away" after observing the police as in Kearse, walks "briskly" in the opposite direction of the officer as in Jackson, or starts "walking faster" upon seeing the squad car as in R.B. See Commonwealth v. Barnett, 484 Pa. 211, 398 A.2d 1019 (1979) (running); Commonwealth v. Stratton, 231 Pa.Super. 91, 331 A.2d 741 (1974) (running).[2]
While it also has been said that the fact that the events take place in a high crime area is not, standing alone, a sufficient basis upon which to conclude that the defendant was engaged in, or about to become engaged in, criminal conduct, G.J.P. v. State, 469 So.2d 826 (Fla. 2d DCA 1985), implicit in such a statement is that it is permissible to take into account the factor of a high crime area. Although we decide here that (a) running from the police (b) in a high crime area together do not justify an *700 investigative stop, we have grave doubts that any weight whatsoever should be given to the high crime area setting. It is, indeed, a pernicious proposition that it is easier to justify the investigatory stop of people who are situated in high crime areas than those who are not. The fact that an area has had the misfortune of being the site of greater than ordinary criminal activity does not, in our view, justify the diminution, however slight, of the constitutional rights of people in that area.
From our conclusion that the stop of the defendant was unlawful, it follows that the contraband obtained from the bag dislodged from the defendant's hand when the officer physically subdued the defendant should have been suppressed. There being no other evidence to support the defendant's conviction for trafficking in cocaine, the conviction is reversed with directions to discharge the defendant.[3]
Reversed, with directions.
SCHWARTZ, C.J., concurs.
BASKIN, Judge (specially concurring).
I join in the majority decision but refrain from concurring in statements pertaining to matters which might arise in the future but are not necessary to the resolution of this case. Dicta is "at most persuasive" and not precedential, Continental Assurance Co. v. Carroll, 485 So.2d 406, 408 (Fla. 1986); see Hayes v. State, 439 So.2d 896, 902 (Fla. 2d DCA 1983), review denied, 447 So.2d 886 (Fla. 1984), reversed on other grounds, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), merely furnishing insight into the "philosophical views" of the court, Bunn v. Bunn, 311 So.2d 387, 389 (Fla. 4th DCA 1975). "Judicial pronouncements which are obiter dicta in character more often serve to confound than to clarify the jurisprudence of the State." Dobson v. Crews, 164 So.2d 252, 255 (Fla. 1st DCA 1964), aff'd, 177 So.2d 202 (Fla. 1965).
NOTES
[1] Although it is arguable that flight from an approaching police officer indicates mens rea, it is also arguable that flight is a manifestation of a person's autophilia, xenophobia, pantophobia, cleithrophobia, aichmophobia or even rhabdophobia. Thus, flight itself is ambiguous and, therefore, we require that there be other suspicious circumstances to give to flight an incriminatory connotation.
[2] Of course, if it is shown that an accused ran to avoid harassment by an approaching officer, then the flight has no significance whatsoever and cannot be factored into the suspicious circumstances calculus. See People v. Aldridge, 35 Cal.3d 473, 198 Cal. Rptr. 538, 674 P.2d 240 (1984). In the present case, the defendant was aware of the reputation of an officer who had worked the Overtown neighborhood for ten years and had been nicknamed "Gray Streaks" by the denizens. The reputation of "Gray Streaks," according to the defendant, was: "He just arrests a lot of people. Like just arrests them if they are in the wrong place. He just arrests them." The defendant's companion informed him that it was "Gray Streaks" who was approaching; the defendant then said, "Oh s____, the cops," and, picking up his fungible and unremarkable paper bag, took off running.
[3] Immediately after the oral argument in this case, we ordered that the defendant be discharged from custody forthwith, noting that this opinion would follow. Once again, see Johnson v. State, 501 So.2d 158, 161 n. 7 (Fla. 3d DCA 1987), inaction by the public defender's office after the filing of the notice of appeal in August 1985 resulted in the dismissal of the appeal in May 1986. Upon application of a special assistant public defender in March 1987, the appeal was reinstated and briefs filed. By the time we heard the case in May 1987, the defendant had already served 22 months of the 5 1/2-year sentence.