551 So.2d 1237 (1989)
STATE of Florida, Appellant,
v.
Tony A. PYE, Appellee.
No. 88-1957.
District Court of Appeal of Florida, First District.
October 25, 1989.
Rehearing Denied November 29, 1989.
Robert A. Butterworth, Atty. Gen., Richard E. Doran, Asst. Atty. Gen., and Libby West, Certified Legal Intern, for appellant.
Michael E. Allen, Public Defender, and Nancy L. Showalter, Asst. Public Defender, for appellee.
ERVIN, Judge.
The trial court granted appellee's motion to suppress cocaine seized from him and the State appeals. Because we conclude from a totality of the circumstances that the officers possessed a well-founded suspicion *1238 of criminal activity to effectuate an investigatory stop of the appellee, we reverse and remand for further proceedings.
The apartment complex in question had been plagued with narcotics problems; the laundry room area inside it was particularly noted for drug transactions. The owners had in fact posted "no trespassing" signs, and many of the residents had written letters to the police asking them to make arrests for trespassing. Acting on these complaints, Officers Peck and Hulbert arrived at the scene of the apartment complex at 1:00 a.m., and saw four or five persons standing outside the laundry room, one of whom was appellee. When the two officers approached the group, someone shouted, "That's Officer Peck." Appellee, who was holding a cardboard box on his shoulder, immediately began to back away into the shadows. As Officer Hulbert exited the car, appellee quickly placed the box on the ground and ran from the area. Appellee continued his flight, notwithstanding Hulbert's command to stop. Hulbert gave chase and, after overtaking appellee, threw him to the ground and handcuffed him. The other officer remained at the scene where he observed approximately $100 worth of candy bars inside the open cardboard box. He then left to assist Officer Hulbert in securing appellee. While rolling appellee over for the purpose of conducting a pat-down search, Peck saw a baggie and a prescription bottle directly underneath appellee, both of which appeared to contain crack cocaine. The items were seized, and appellee was transported to the police department, where he was given the Miranda warnings with his mother present. He told the police that the cocaine belonged to one "Slim," however, the prescription had both his mother's name and address on it.
Appellee moved to suppress the use of the cocaine as evidence on the grounds that the officers had neither probable cause to arrest him, nor a reasonable suspicion that a crime was being committed to justify detaining him. The court granted the motion to suppress, based upon determinations that there was no probable cause to arrest appellee and, relying upon Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987),[1] that there were no facts or circumstances that would justify an investigatory stop. Although we agree that the officers initially lacked probable cause to arrest appellee, we find that the facts and circumstances presented are sufficient to support an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Section 901.151, Florida Statutes (1987).
In determining whether an officer possesses a reasonable or well-founded suspicion of criminal activity so as to justify an investigatory stop, "the totality of the circumstances  the whole picture  must be taken into account." Tamer v. State, 484 So.2d 583, 584 (Fla. 1986) (quoting from United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)). Thus, even if none of the facts standing alone would give rise to a reasonable suspicion, when taken together, as viewed by an experienced officer, they can provide clear justification for a brief detention. Tamer, 484 So.2d at 584. Although reasonable persons might differ regarding whether the circumstances observed by a police officer provide founded suspicion that criminal activity was afoot, certain other factors may be considered in determining the possibility of criminal activity. Those facts include the time of day, the day of the week, the location, the physical appearance of the suspect, the behavior of any vehicle involved, or anything unusual in the situation as interpreted in light of the officer's knowledge. State v. Hoover, 520 So.2d 696, 697 (Fla. 4th DCA 1988). As was observed in State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978): "A `founded suspicion' ... has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge."
*1239 Flight at the sight of an approaching officer is such a fact that may be considered in justifying an investigatory stop, if other suspicious circumstances are present. Hoover, 520 So.2d at 698. See e.g., A.E.R. v. State, 464 So.2d 152 (Fla. 2d DCA) (trespassing complaint, coupled with efforts to elude officers), review denied, 472 So.2d 1180 (Fla.), cert. denied, 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985); State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980) (defendant in high-crime area seen peering from alley into window of apartment, coupled with flight); Isham v. State, 369 So.2d 103 (Fla. 4th DCA 1979) (anonymous tip detailing defendant and an impending drug sale, coupled with flight), cert. denied, 381 So.2d 770 (Fla. 1980), receded from on other grounds, In the Interest of G.A.R., 387 So.2d 404 (Fla. 4th DCA 1980); Gibson v. State, 368 So.2d 667 (Fla. 3d DCA 1979) (defendant's presence in deserted alley early in morning, plus flight).
We conclude that the two officers below manifested reasonable suspicion to carry out an investigatory stop, due to their observations of all of the circumstances at the scene, including the fact that appellee was seen holding a box at 1:00 a.m. in a high-crime, narcotics area that was posted against trespassing, and that upon seeing the officers, he dropped the box and fled. Although appellee cites numerous cases for the proposition that flight alone does not justify an investigatory stop, they are inapplicable to the instant case, because of the additional, suspicious circumstances recited.
Additionally, we observe that an investigatory stop may be justified by the fact of suspected trespass alone. See State v. Dilyerd, 467 So.2d 301 (Fla. 1985) (police officers, who had been alerted to trespass problems by the property owner, were justified in stopping two men in parked car on that property).
Having thus determined that the officers possessed founded suspicion of criminal activity to justify stopping appellee, we find no support for the trial court's order of suppression on the ground that the cocaine was illegally seized.[2] In so saying, we reject appellee's argument that suppression is required for the reason that an unlawful arrest occurred when Officer Hulbert shouted, "Stop, Police" and "Stop, you are under arrest." The police officer's words alone cannot transform an investigatory stop into an arrest. Nor does the Fourth Amendment require a police officer, who lacks the precise level of information necessary to arrest for probable cause, to shrug his shoulders in the face of reasonable belief that criminal activity is afoot, and thereby allow a crime to occur or a criminal to escape. Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616 (1972). It would be fruitless to grant an officer the authority to make an investigatory stop, and then ask him to stand aside while his order is flouted. See 3 W. LaFave, Search and Seizure § 9.2(d), at 368 (1987). Moreover, although handcuffing a suspect is not ordinarily proper, handcuffs may be applied to effectuate an investigatory stop. See e.g., United States v. Purry, 545 F.2d 217 (D.C. Cir.1976).
In reaching our result, we are cognizant of the rule that the determinations of a trial court in considering a motion to suppress come to an appellate court clothed with a presumption of correctness, and that a reviewing court will interpret the evidence and reasonable inferences derived therefrom in a manner most favorable to such ruling. State v. Parrish, 470 So.2d 869, 871 (Fla. 1st DCA 1985). Nevertheless, if the trial judge misapplies the law to the facts, reversal is required, State v. Navarro, 464 So.2d 137 (Fla. 3d DCA 1984) (on rehearing en banc 1985). In our judgment, the trial court initially erred by applying the probable cause standard that is necessary to effect valid arrests. It also erred, when it determined that the officers *1240 lacked a basis for establishing a well-founded suspicion to make a valid stop, in failing to take into proper account all of the circumstances observed by the officers at the scene  circumstances that included the congregation of several persons in an area that had been posted against trespassing, reports of prior criminal activity, and the suspicious movements of appellee himself.
REVERSED and REMANDED for further proceedings.
SHIVERS, C.J., and JOANOS, J., concur.
NOTES
[1] In Cobb, the Third District held under the facts presented that "(a) running from the police (b) in a high crime area together do not justify an investigatory stop." Cobb, 511 So.2d at 699-700.
[2] This is not a case such as Isham, in which the cocaine was discovered on the appellant's person. Here, the cocaine was in plain view.