553 So.2d 301 (1989)
William James KEY, Appellant,
v.
STATE of Florida, Appellee.
No. 88-3218.
District Court of Appeal of Florida, First District.
November 30, 1989.
Rehearing Denied January 8, 1990.
*302 Michael E. Allen, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and John M. Koenig, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
We review the denial of appellant Key's motion to suppress the cocaine seized from him and reverse because the officer did not have probable cause to conduct the search.
The motion alleged that Key was illegally searched by Officer Litton as a result of information telephoned to the Havana Police Department by an unknown black female, and that defendant's arrest was the result of the illegal search. At the hearing on the motion, Sergeant Litton of the Havana Police Department testified that he was present at the station when a call came in from a black female whose voice he did not recognize, that the black female stated that she had just come through the dirt part of East Eleventh Avenue, where a Willie James Key, known personally to her, and two unknown black males tried to sell her some crack cocaine. Describing her conversation with him, Litton testified that the caller said the attempted sale had occurred about 3 minutes prior to her call, that the three men had stopped her and tried to make the sale, that she was scared, that she knew Willie James Key personally, and that she could not describe the other two men. Then she immediately hung up on him (R. 6).
Litton testified that he then went directly to the location described and "upon turning on Eleventh Avenue off of River Road and going down it, about half way through it, I spotted Mr. Key, who I know also." Litton stated it took him about a minute and a half from the time he hung up the telephone to reach the location of the defendant. Litton testified that when he arrived he told Key about the tip that Key was there trying to sell cocaine, that he was going to search Key, and that Key made no remark that he didn't want to be searched. Litton further stated that he did not ask for consent to search, and that he searched Key and found one gram of crack cocaine wrapped in a paper towel. He also found a box cutter blade in Key's left front shirt pocket and one crack pipe in his left back pants pocket. Litton testified that approximately six months earlier he had arrested Key for possession of cocaine and that Key had three grams on him at that time. On cross-examination, Litton confirmed that the only reason he stopped and searched Key was the information he had received from the anonymous phone call. The court denied the motion to suppress and subsequently entered a judgment of conviction upon Key's nolo contendere plea reserving the right to appeal that denial. The court found the ruling on the motion to suppress was dispositive of the case.
This was clearly not a consensual search, and the state agrees that this was not a temporary detention and pat-down search pursuant to a Terry stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The state argues that the officer had probable cause to search Key under the totality of circumstances test set forth in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), pointing only to the uncorroborated tip from the anonymous informer and the officer's prior arrest of Key for possessing cocaine some five months before.
We cannot agree that these circumstances rise to the level of probable cause to *303 believe that Key personally possessed cocaine on this occasion under the Gates test because there was insufficient corroboration of the details of the unidentified informant's tip. The adoption of the totality of circumstances test in Gates did not obviate the need for corroboration of the details stated in the anonymous tip.[1] Key's arrest by officer Litton for possession of cocaine some five months earlier did not corroborate any of the details stated by the informant. Moreover, that occurrence was too remote in time to supply the officer with probable cause that Key possessed cocaine or was perpetrating any criminal act on this particular occasion. Sheppard v. State, 521 So.2d 288 (Fla. 1st DCA 1988) (and cases cited therein). There simply was no corroboration of the details of the anonymous tip in any respect other than the fact that the officer found Key at the place indicated by the informant; but the officer did not personally observe any criminal activity on Key's part at that time, and thus did not have any personal knowledge that would corroborate the details of the tip that defendant was possessing illicit drugs or attempting to sell illicit drugs on this occasion. Since the state points to no other circumstances giving rise to probable cause to believe that Key was committing a criminal offense at the time, the state has failed to prove that the arresting officer had the requisite probable cause to conduct the search. Sheppard v. State, 521 So.2d 288 (Fla. 1st DCA 1988). It was, therefore, error for the court below to deny the motion to suppress because the search violated Key's rights under the Florida Constitution and the U.S. Constitution.
The judgment of conviction is REVERSED and the cause is REMANDED with directions to discharge the appellant.
ERVIN, J., concurs.
NIMMONS, J., dissents with written opinion.
NIMMONS, Judge, dissenting.
I would affirm. The determinations of a trial court in considering a motion to suppress come to an appellate court clothed with a presumption of correctness, and the reviewing court will interpret the evidence and reasonable inferences arising therefrom in a manner favorable to the trial court's ruling. State v. Parrish, 470 So.2d 869, 871 (Fla. 1st DCA 1985).
Certainly, I recognize that under the rigidities of the old Aguilar-Spinelli[1] two-pronged test, the search would be a bad one because missing would be the requirement that the veracity of the tipster/informant be independently established. But the Gates[2] decision abandoned the two-pronged test, relaxing the standard applicable to anonymous tips in determining probable cause. The totality of the circumstances analysis adopted by Gates invokes a common-sense approach in determining whether there exists probable cause to believe that evidence of a crime is located or being possessed at a given place.
It is true that there is no evidence in the instant case as to the veracity of the informant. *304 However, this is not necessarily fatal under the Gates balancing approach whereby other evidence may establish sufficient indicia of reliability of the tip so as to support the requisite probable cause. Gates, 462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d at 545.
In my view, the evidence was sufficient to support the trial court's finding of sufficient reliability of the information supplied by the anonymous caller. Although I admit that an unscrupulous rogue might use his anonymity in fabricating the kind of information imparted to the police in this case, we could undoubtedly parade a wide variety of horribles in other search and seizure scenarios which have passed Fourth Amendment scrutiny. As above noted, Gates encourages a common-sense approach. I believe that the average person, possessed of the information that Officer Litton had at the time of the search, would reasonably conclude that there was a high degree of likelihood that the suspect had, in fact, accosted the informant a few minutes earlier with a proposal to sell cocaine and that the suspect still had the cocaine on his person. Proof to an absolute certainty or beyond a reasonable doubt is, of course, not required  but only probable cause.
The informant identified the suspect by name, advised that the suspect, only three minutes earlier, was attempting to sell cocaine at a certain location on Eleventh Street and that she knew this because it was her to whom the suspect had tried to sell the cocaine. The officer responded immediately and discovered the suspect at the very place described by the informant. Moreover, the officer knew the suspect and knew of his past involvement with cocaine. Common sense suggests that this is the kind of information upon which people act in reliance in their everyday affairs with a high degree of confidence.
The majority erroneously relies upon the 30-day staleness rule exemplified by Sheppard v. State, 521 So.2d 288 (Fla. 1st DCA 1988), which the majority cites. That rule has to do with the passage of time between the date of the offense observed by the informant and the date of the search. As observed in Hamelmann v. State, 113 So.2d 394, 396 (Fla. 1st DCA 1959), upon which the Sheppard panel relied, the 30-day staleness rule pertains to "the permissible number of days which may elapse between the date of the observed offense and the making of the affidavit upon which the search warrant is based". Obviously, the rule is addressed to the question of whether it is likely that the contraband previously observed by the informant is still present. That is obviously not the issue in the instant case because the informant's observations occurred only minutes prior to the search. Contrary to the majority's holding, the defendant's prior cocaine offense is a relevant circumstance under the Gates totality of circumstances analysis and should not automatically be disregarded under the 30-day staleness rule.
I would affirm.
NOTES
[1] In Gates the Court stated:

Our decisions applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work. In Jones v. United States, 362 US, [257] at 269, [80 S.Ct. 725, at 735, 4 L.Ed.2d 697] we held that an affidavit relying on hearsay "is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." We went on to say that even in making a warrantless arrest an officer "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Ibid. Likewise, we recognized the probative value of corroborative efforts of police officials in Aguilar  the source of the "two-pronged test"  by observing that if the police had made some effort to corroborate the informant's report at issue, "an entirely different case" would have been presented. Aguilar [v. State of Texas], 378 US, [108] at 109, n. 1 [, 84 S.Ct. 1509-1511 n. 1, 12 L.Ed.2d 723].
462 U.S. at 241-42, 103 S.Ct. at 2333-34.
[1] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[2] Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).