804 So.2d 528 (2002)
F.E.A., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-313.
District Court of Appeal of Florida, First District.
January 8, 2002.
Nancy A. Daniels, Public Defender, and David P. Gauldin, Assistant Public Defender, Office of the Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Karen Armstrong, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
POLSTON, J.
After an investigatory stop by a sheriffs deputy, Appellant was charged with possession of less than 20 grams of cannabis, possession of paraphernalia, and possession of an alcoholic beverage by a person under the age of 21 years. Appellant filed a motion to suppress evidence on the basis that the sheriffs deputy did not have reasonable suspicion to stop Appellant's vehicle, and the stop therefore violated search and seizure constitutional provisions. See U.S. Const. amend. IV; Art. I, § 12, Fla. Const. The trial court denied the motion, and Appellant pled nolo contendere as charged, reserving the suppression issue for appeal. We agree with the trial court that the deputy had reasonable suspicion to stop Appellant for further investigation.

I.
On December 22, 1999, between 9:30 p.m. and 10:00 p.m., an Escambia County sheriffs deputy patrolled by a closed ballpark. One of the managing authorities of *529 the ballpark had requested the deputy's patrol because there had been a lot of criminal mischief and burglaries at the ballpark. When the deputy arrived, he observed a car, with its lights off, parked at the dark, closed ballpark, and saw a male run from the ballpark's field, jump in the car, and speed away. The deputy followed and stopped the car a few blocks away at a convenience store, for further investigation.
When the deputy approached, he smelled a strong odor of marijuana coming from the car, so he called a K 9 unit to conduct a search of the car. During the search, cannabis, paraphernalia, and alcoholic beverages were found, and Appellant was charged.

II.
Appellant argues that the trial court erred in denying his motion to suppress, citing Jordan v. State, 707 So.2d 338 (Fla. 2d DCA 1998). In Jordan, a deputy sheriff was on routine patrol and drove by Jordan, who was in a pickup truck parked in a dark area next to a closed business, which had been burglarized in the past. Id. When the deputy started to turn around to go back to the truck, Jordan pulled away. Id. The deputy noticed various items in the back of the truck, and decided to stop Jordan to investigate if any of the items were stolen. Although the items were determined to not be stolen, Jordan told the deputy, upon questioning, that he had a little dope in the truck. Id. The court held that the deputy did not have a founded suspicion of criminal activity to justify the stop of Jordan's truck. Id. at 339.
The State argues that this case is different from Jordan, which was decided before the United States Supreme Court's decision of Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), because the defendant in Jordan did not flee at the sight of police. Here, the deputy observed a male run from the ballpark, and flee at the sight of police. Given the totality of the circumstances, the State argues, including the location, time of night, and Appellant's behavior, the deputy had reasonable suspicion to support the stop of Appellant's vehicle.
Appellant argues that the facts of Jordan and this case, including unprovoked flight from the police officer, cannot be distinguished:
While unprovoked flight from law enforcement is a factor (and only a factor) to be considered in a "Terry stop," [Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], it is merely ambiguous. Certainly it was no more significant in this case than the existence of the "stuff" was in Jordan's truck.
All other factors were equal. Both involved parked vehicles that left at the sight of law enforcement. Both involved parked vehicles at establishments closed for the evening. Both involved places where crime had allegedly occurred before. Both were violations of [ ] each defendant's respective Fourth Amendment rights not to be unreasonably seized.
Initial Brief of Appellant at 5.
To the extent that Appellant's running in unprovoked flight is "ambiguous," as argued by the Appellant, the evidence, and all reasonable inferences therefrom, are construed in a manner most favorable to upholding the trial court's determination. State v. T.L.W., 783 So.2d 314, 315 (Fla. 1st DCA 2001). Moreover, even if Appellant's running was ambiguous as to whether he was in flight from seeing the police, he appeared to be fleeing from something or someone. This conduct, combined with the time, place, and other *530 circumstances justified the officer in stopping Appellant briefly to resolve this ambiguity. United States v. Jordan, 232 F.3d 447, 449 (5th Cir.2000)(officers were justified in detaining defendant briefly to resolve ambiguity of his running from something or someone; although defendant was already running when officers first observed him, he was in a high crime area running from the direction of a store about a block away and kept looking over his shoulder).
We agree with Appellant that both Jordan and Appellant had parked vehicles that left at the sight of law enforcement. Jordan, 707 So.2d at 338 ("When the deputy started to turn around to go back to the truck, Jordan pulled away."). However, under Wardlow, Appellant's leaving at the sight of law enforcement and being in a high crime area gave the officer a reasonable suspicion to stop Appellant and further investigate.
In Wardlow, the Court held that the officers had a reasonable suspicion to stop the respondent and investigate because the respondent was in a high crime area and ran in unprovoked flight upon noticing the police. 528 U.S. at 124-25, 120 S.Ct. 673. Florida courts have previously held that flight from law enforcement officers in a high crime area was not enough to constitute a reasonable suspicion for an investigatory stop. See McMaster v. State, 780 So.2d 1026, 1029 (Fla. 5th DCA 2001)(collecting cases). However, Wardlow holds to the contrary, and because we are bound to follow it pursuant to article I, section 12 of the Florida Constitution, numerous Florida cases have been overruled. Id. (citing cases); State v. O.S., 767 So.2d 509 (Fla. 4th DCA 2000)(same).
In Copeland v. State, 756 So.2d 180, 181 (Fla. 2d DCA 2000), the same court that decided Jordan held that officers had reasonable suspicion to stop and investigate Copeland, citing Wardlow. Officers were on patrol in a high crime area, when they came upon a group of several people gathered around a parked car in front of a residence. A few of them ran when they saw the police. Although Copeland did not run, he backed away from the officers looking nervous and stood behind someone, concealing his hands. One of the officers held him in an "arm bar" while a second officer conducted a pat-down search, finding cocaine. The court noted that prior to Wardlow, it would have found that the stop violated Mr. Copeland's Fourth Amendment rights. Id. (citing overruled cases). Although we believe that Jordan may have been overruled by Wardlow, we do not need to reach that determination because we decline to follow Jordan as requested by Appellant.
We hold that a totality of the facts and circumstances, as argued by the State, combined to provide the deputy with reasonable suspicion to stop Appellant for further investigation. See Wardlow, 528 U.S. at 124-25, 120 S.Ct. 673 (the officer was justified in suspecting that Wardlow was involved in criminal activity because of being in a high crime area and was in flight; "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior"); State v. Gandy, 766 So.2d 1234, 1236 (Fla. 1st DCA 2000)("Whether an officer has a founded suspicion of criminal activity justifying a seizure is determined by the `totality of the circumstances.'"); State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989)(totality of circumstances supported officers' wellfounded suspicion of criminal activity, including defendant was in area known for criminal activity at 1:00 a.m. and fled upon seeing the officers); United States v. Briggman, 931 F.2d 705, 709 (11th Cir.1991)(investigatory stop was permissible when defendant's car was in a parking *531 lot at 4:00 a.m. in a high crime area, when the commercial establishments served by the lot were closed for the night, and in departing the parking lot the defendant attempted to evade the officer, who then made the stop).
AFFIRMED.
BARFIELD and VAN NORTWICK, JJ., concur.