526 So.2d 82 (1987)
Lonnie J. MANUEL, Appellant,
v.
STATE of Florida, Appellee.
No. 87-0032.
District Court of Appeal of Florida, Fourth District.
August 12, 1987.
Rehearing Denied November 12, 1987.
*83 Richard L. Jorandby, Public Defender, and Charles D. Peters, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Deborah Guller, Asst. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is one of two cases here which involve this defendant, the other being State v. Manuel, 526 So.2d 85. We are concerned in this case with the defendant's appeal from his conviction for resisting arrest with violence, which we affirm. The other case  arising out of the same episode but at an earlier stage  is the state's appeal from the trial court's order, suppressing the physical evidence, namely, a gun, also being affirmed.
The results of the two cases are consistent. The trial court's suppression of the physical evidence is supportable because the search was illegal, notwithstanding the legality of the original stop or encounter. The conviction here arose out of the defendant's acts when the officers finally caught up with him and have nothing to do with the gun.
The facts are not complex and begin with the officer's having received a BOLO after a robbery. Seeing the defendant, Officer Lumm  in plain clothes  got out of an unmarked car. The defendant, on seeing the officer, turned and walked away. When the officer announced himself as a police officer, the defendant ran, holding a paper bag in his hand.
The officer gave chase, and both tripped over an unseen wire in a hedge. While on the ground, the officer saw the defendant reaching for the paper bag. The officer pointed his previously drawn revolver at the defendant and ordered him to stop. Seeing the gun, the defendant fled on foot, leaving the paper bag behind. The officer picked up the bag, which contained a .45 caliber handgun. The defendant was later located in a bathroom and arrested for carrying a firearm, obstructing a police officer with violence and carrying a firearm by a convicted felon.
Lumm subsequently participated in the arrest of Manuel in a boarding house. He went into a bathroom area and grabbed the suspect. During the struggle Lumm pushed Manuel's head, and it hit a sink.
Officer Scott Russell, also in plain clothes, responded to the call sent from Lumm's radio after appellant bolted. Russell and Officer Evarts entered a two story white building in the area by separate entrances. Russell heard Evarts calling. He located Evarts near a locked bathroom door. Evarts said the suspect was inside. Evarts opened the door. Both Russell and Evarts had drawn their weapons. They identified themselves as police officers and told him he was under arrest, and they ordered him to put his hands behind his back. When Russell stepped into the bathroom, Manuel tried to rush by the officers. There was a struggle. Manuel kept his hands and elbows underneath when they had gotten him down on the floor, resisting getting handcuffed. Russell's badge was *84 on his belt. It took three to four minutes to get Manuel handcuffed.
Officer Evarts testified Manuel had been acting suspiciously, looking around. Evarts thought the bag contained the proceeds from the robbery involved in the BOLO, or a weapon. While Lumm was chasing the suspect, Evarts got back in the car and drove to an area where he could encounter the suspect in the event Lumm lost him. A woman in the house told him the person was in the bathroom. The bathroom door was unlocked. He and Russell opened the door and saw the suspect leaning over the sink, supposedly washing his face. He was in his underwear. Russell went in first and he followed. Evarts' badge was on his belt and his radio was on his hip. They identified themselves as officers and announced they were placing him under arrest. Evarts' testimony concerning the struggle paralleled Russell's. Evarts said both he and Russell were sore and had bruises after the struggle but they did not have to go to the hospital. On cross examination Evarts said that when the officers announced appellant was under arrest he said he had not done anything, he didn't have anything, and they had the wrong man.
Manuel testified in his own behalf. He said that he ran from the officers because he had previously had a confrontation with an officer and he did not want another; that he was holding clothes he had just gotten back from the cleaners when the unmarked police car pulled up; he said that the car pulled up fast and both doors flew open; that the officers did not identify themselves but came out of the car and started chasing him; that the officer pulled his weapon after he started running. He never saw a badge or radio; that when he got to the bathroom he took off only his shirt so he could wash; that the officers came into the bathroom after he unlocked the door; that when they came in they told him to put his hands on the wall; that the officers knocked out his tooth and broke his ribs; that he never swung his elbows as his hands were cuffed behind his back; that he saw guns, but no badges; and that he received an eye injury, not from hitting the sink but from Evarts' fist.
In rebuttal, Lumm testified he was about six feet from Manuel during the chase when he drew his weapon; Evarts testified he punched Manuel in the side and back, but not in the face.
Taking appellant's points in reverse order, we hold that it was not error to refuse his requested instruction because it does not bear upon whether the defendant was justified in resisting arrest with violence, or failed to offer such resistance.
Appellant also claims he was the object of an illegal stop. He cites Vollmer v. State, 337 So.2d 1024 (Fla. 2d DCA 1976), cert. dismissed, 347 So.2d 432 (1977), wherein it is indicated that one who has been subjected to an illegal stop may not be charged with resisting arrest. In Vollmer, the only circumstances that appeared to be suspicious were the time of day  three a.m.  and the fact that the person was walking along the street. There had been no criminal activity in the area. The suspect ran after giving a false name and showing a driver's license with his real name. Only after his arrest for resisting an officer with violence was he found to be carrying drugs.
Assuming that Vollmer is good law  the Supreme Court's dismissal of the certiorari petition was for lack of jurisdiction  we think it is distinguished by its facts. In the instant case, the site was a high crime and drug area; there had been a robbery within six or seven blocks, and a BOLO concerning it a few hours before the subject incident. Although the BOLO could have been more definitive, appellant fit the description, broad though it was. Appellant was holding a bag and looking around in a suspicious manner. This conduct and these circumstances justified an attempted encounter by the officers with the appellant. See State v. Smith, 477 So.2d 658 (Fla. 5th DCA 1985). Moreover, we hold the BOLO, though not as complete as it should be, in tandem with the other circumstances, was sufficient to support an investigatory stop, as that expression is used since Terry v. Ohio, 392 U.S. 1, 88 *85 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant's flight justified enhanced suspicion, see State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980), and Officer Lumm's knowledge of the contents of the bag  a concealed firearm  was justification for an arrest.
Although the parties appear not to address this, it is an offense to use force in resisting arrest, even when the arrest is technically illegal, if the defendant reasonably knows that the person making the arrest is a law enforcement officer. State v. Johnson, 382 So.2d 866 (Fla. 2d DCA 1979); Meeks v. State, 369 So.2d 109 (Fla. 1st DCA 1980); Lowery v. State, 356 So.2d 1325 (Fla. 4th DCA 1978). A similar statement was included in the instructions given to the jury.
GUNTHER, J., and LUZZO, JOHN T., Associate Judge, concur.