784 So.2d 1124 (1999)
Tomas HERNANDEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 98-2413.
District Court of Appeal of Florida, Third District.
November 24, 1999.
*1125 Bennett H. Brummer, Public Defender, and Andrew Stanton, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and M. Rebecca Springer, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and COPE and GREEN, JJ.
COPE, J.
Tomas Hernandez appeals his convictions of burglary, grand theft, and possession of burglary tools. We affirm.
Defendant-appellant Hernandez first contends that the officer who apprehended him had no reasonable suspicion which would warrant the performing of an investigatory *1126 stop, and that therefore the evidence seized as a result of the stop should have been suppressed. We disagree.
At 3:00 a.m. a police officer received a call from the dispatcher regarding suspicious activity in the parking lot of an apartment complex. The police officer reached the apartment complex one minute later. He observed a white van parked in a regular parking space, with the front of the van facing the curb. Backed up to the white van was a red van. The rear doors of each van were open.
When the officer drove up, three of the four individuals standing by the vans walked away. The defendant attempted unsuccessfully to close the van doors and started to leave as well. The officer directed the defendant to stop and asked for identification. Upon checking, the officer found the defendant was wanted on an outstanding warrant for driving under the influence, and took him into custody.
Inside or just by the vans, the police found two air-conditioning units which had been stolen from a home under construction. The police also found pry bars and other tools.
The trial court heard evidence on the defendant's motion to suppress, and denied the motion. The court concluded that under the totality of the circumstances, the police officer had a founded suspicion that criminal activity was afoot, and that an investigatory stop was justified. See § 901.151, Fla. Stat. (1997). We entirely agree.
The question is whether the police officer had a reasonable suspicion a crime had been, was being, or was about to be, committed. See § 901.151(2), Fla. Stat. (1997). In making that determination, the court considers the totality of the circumstances. See Alabama v. White, 496 U.S. 325, 330-31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); Jenkins v. State, 685 So.2d 918, 920 (Fla. 1st DCA 1996). Thus:
Some of the factors ... which may be evaluated by police officers to reasonably suggest a suspect's possible commission, the existence, or imminence, of a crime are:
The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge.
To this list may be added, the factor of flight.
State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980) (quoting State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978)); see also Jenkins v. State, 685 So.2d 918, 920 (Fla. 1st DCA 1996); State v. Russell, 659 So.2d 465, 467 (Fla. 3d DCA 1995); Brown v. State, 592 So.2d 1237, 1238 (Fla. 1st DCA 1992); Thornton v. State, 559 So.2d 438, 439 (Fla. 1st DCA 1990); State v. Pye, 551 So.2d 1237, 1238 (Fla. 1st DCA 1989); Johnson v. State, 547 So.2d 699, 701 (Fla. 1st DCA 1989); State v. Kibbee, 513 So.2d 256, 258 (Fla. 2d DCA 1987).
The officer does not have to actually observe a crime being committed. Reasonable suspicion can exist even though the suspicious activity is consistent with innocent activity. The United States Supreme Court has said:
"[I]nnocent behavior will frequently provide the basis for a showing of probable cause," and that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is `innocent' or `guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion inquiry.
United States v. Sokolow, 490 U.S. 1, 9-10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citation omitted).
*1127 Applying those principles here, the officer observed a white van properly parked in the apartment complex parking lot. It was 3:00 a.m. Backed up to the white van was a red van which had not been parked for the night. It was protruding into the driving area. The back doors of both vans were open.
At three o'clock in the morning an officer could reasonably suspect that the white van was being burglarized, with the contents being transferred into the red van. This type of activity and parking arrangement might be unremarkable in the daytime, but they are unusual at 3:00 a.m. These facts added up to a reasonable suspicion to conduct an investigatory stop.
Defendant's attempt to leave the area when he saw the police officer was not, by itself, enough to create a reasonable suspicion. See Cobb v. State, 511 So.2d 698, 699 (Fla. 3d DCA 1987). However, flight can be considered when there are other suspicious circumstances. Thus:
It is commonly held that flight at the sight of an approaching police officer is a suspicious circumstance which, when added to other suspicious circumstances, may justify the belief that the defendant was engaged in criminal activity and, therefore, an investigatory stop. See, e.g., A.E.R. v. State, 464 So.2d 152 (Fla. 2d DCA 1985) (trespassing complaint plus efforts to elude officers); State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980) (observation of defendant peering from an alley into first floor window of an apartment plus flight); Isham v. State, 369 So.2d 103 (Fla. 4th DCA 1979) (informant's detailed tip concerning an impending drug sale by the defendant plus flight); Gibson v. State, 368 So.2d 667 (Fla. 3d DCA 1979) (defendant's presence in front of alley in deserted area at early morning hour plus flight).
Cobb, 511 So.2d at 699 (some emphasis added; some emphasis in original); see State v. Pye, 551 So.2d 1237, 1239 (Fla. 1st DCA 1989); State v. Hoover, 520 So.2d 696, 698 (Fla. 4th DCA 1988); Manuel v. State, 526 So.2d 82, 85 (Fla. 4th DCA 1987); State v. Smith, 477 So.2d 658, 661 (Fla. 5th DCA 1985). In light of the already suspicious circumstances in this case, the attempt by defendant and his companions to walk away may be considered in deciding whether there was a reasonable suspicion. Drivers of motor vehicles do not normally walk away, leaving the doors open and, as to the red van, the vehicle protruding into the traffic area, as defendant and his companions did in this case.
In arguing for suppression, defendant relies on L.M. v. State, 694 So.2d 118, 119 (Fla. 3d DCA 1997). That case is not on point. In L.M. there had been an anonymous call to the police that a car was being burglarized in a fenced church parking lot. When the police officer arrived, there were several juveniles walking on the sidewalk adjacent to the church, but they were not in the fenced parking lot; the officer did not observe the juveniles doing anything unusual that would give rise to a founded suspicion; and there was not yet a confirmation that an actual car burglary had taken place. Under those circumstances, the court concluded that there was no founded suspicion. Here, by contrast, the officer directly observed unusual activity at an unusual hour which gave rise to a reasonable suspicion of criminal activity.[1]
*1128 We respectfully disagree with the position of the dissent. The dissent focuses on the reasons the officer gave for stopping the defendant, which were:
Based on the call we were receiving of suspicious activity, and finding the van back to back. And which as I asked him to approach me, he basically was walking towards the apartment complex attempting to avoid coming towards me.
(TR. 21). The dissent characterizes this testimony as an admission by the officer that "he stopped Hernandez solely upon the anonymous tip and Hernandez's evasive actions." Dissent at 17. But that analysis overlooks the officer's testimony that the reasons for the stop included "finding the van back to back." (TR. 21).
The important point is that the officer's legal conclusion on the issue of probable cause or reasonable suspicion is not binding on the trial court or this court. See State v. Sobrino, 587 So.2d 1347, 1351 (Fla. 3d DCA 1991). "The existence of probable cause is measured by an objective standard, not based on an officer's underlying intent or subjective motivation." State v. T.P., 588 So.2d 286, 287 (Fla. 3d DCA 1991) (citing Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), and Padron v. State, 449 So.2d 811 (Fla.1984)); see also Whren v. United States, 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "Nor would the legal conclusion of the officer prevent the State from arguing and presenting evidence that probable cause did in fact exist." Routly v. State, 440 So.2d 1257, 1261 (Fla.1983).
The dissent is entirely correct in saying that the contents of the anonymous tip must be disregarded in the circumstances of this case, see note 1 supra, and is also correct in saying that flightthe defendant's effort to avoid the officerstanding alone, is not enough to give rise to a reasonable suspicion. But, as already stated, the vehicles were parked in an unusual way, at an unusual hour, which would reasonably give rise to a founded suspicion that criminal activity was afoot. Given these suspicious circumstances, flight could also be considered. The trial court correctly concluded that, under the totality of the circumstances, there was a reasonable suspicion to support an investigatory stop.[2]
As his second issue, defendant contends that the evidence was legally insufficient to convict him of the crime of possession of burglary tools under section 810.06, Florida Statutes (1997). The statute criminalizes "possession [of] any tool, machine, or implement with intent to use the same, or allow the same to be used, to commit *1129 any burglary or trespass...." Id.; see Thomas v. State, 531 So.2d 708, 709-10 (Fla.1988); Hierro v. State, 608 So.2d 912, 915 (Fla. 3d DCA 1992).[3] The defendant was in possession of pry bars and other tools at the time of his arrest.
After defendant's arrest, an officer went to the house which had been burglarized. He testified that the sliding glass door had been pried open. This testimony was sufficient to create a jury issue regarding defendant's intent in possessing the tools.
Defendant argues that the officer's testimony must be disregarded. When the prosecutor questioned the officer, he asked whether the officer had gone to 15830 S.W. 7th Street. The officer answered yes, and went on to testify regarding the condition of the burglarized premises. In reality, either the prosecutor misspoke in stating the address, or there is a transcription error, because the actual address of the burglarized location was 15860 S.W. 207 Street. Defendant argues that the officer must have been talking about some other case and some other location, and therefore the officer's testimony must be put aside.
This argument is without merit. It is plain from the entire context what premises are being discussed. In fact, the officer identified the photographs he took of the burglarized premises, which were introduced into evidence without objection. In the motion for judgment of acquittal, defendant never suggested that the testimony of the officer must be disregarded. The motion for judgment of acquittal was properly denied, and the officer's testimony was properly considered by the jury.
Affirmed.
SCHWARTZ, C.J., concurs.
GREEN, J. (dissenting).
A careful reading of the majority opinion leads only to one inescapable conclusion the police in this case had reasonable suspicion to effectuate a Terry[4] stop of the appellant solely because the appellant sought to evade the police at 3:00 in the morning. Until today, no Florida court has ever found time of day and/or flight, without more, to be sufficient to create reasonable suspicion. Because I believe that the majority opinion constitutes a serious departure from existing Florida law and if allowed to stand, will effectively nullify the notion of any consensual encounter between a citizen and the police under the fourth amendment in this district, I respectfully, but strenuously dissent.
To fully understand why the appellant here was stopped and seized, it is necessary to recite a more exact and detailed chronology of the record events as adduced at the suppression hearing below. *1130 At approximately 3:00 a.m. on the date in question, Homestead police officer, Ronald Surlow, received an anonymous call that two white Latin males were acting suspiciously, possibly breaking into cars, in the parking lot of an apartment complex. The caller provided no further description of the males or the activities observed. Since Officer Surlow was only a block-and-a-half away from the apartment complex, he arrived there approximately one minute later. He was uniformed and driving a marked police car.
Upon his arrival, Officer Surlow did not find two Latin males burglarizing a vehicle. Instead, he observed two Latin males, one Latin female and another undescribed male standing around two vans, parked back-to-back, in the apartment complex parking lot. Significantly, there was no visible evidence that either of these vans had been burglarized (e.g. broken windows, broken locks, raised steering columns, etc.). Indeed, Officer Surlow testified at the hearing below that he did not observe anything at the scene to suggest that any criminal activity had taken place or was afoot.
As Officer Surlow got out of his police vehicle and started to approach these individuals, the undescribed male walked behind one of the vans and disappeared. One of the Latin males and the female also immediately left the area and entered one of the apartments at the complex. The remaining Latin male, appellant Hernandez, also began to leave the area after attempting to close the opened van doors. As Hernandez was in the process of attempting to close the doors to the vans, Officer Surlow asked Hernandez to come over to where the officer was standing. Hernandez, instead, began to walk toward the apartment complex. Thereupon, Officer Surlow shined his flashlight on Hernandez and commanded him to come over to where the officer was standing. There, Officer Surlow requested Hernandez's name and date of birth. When Hernandez complied, the officer performed a criminal records check. The records check revealed that Hernandez had an outstanding bench warrant for DUI. Officer Surlow arrested him on the outstanding bench warrant and frisked him. Upon patting Hernandez down, the officer retrieved a Letterman tool and the keys to one of the vans.
After Hernandez had been arrested and was in custody, two other police officers, Officers Snyder and Duckworth, arrived on the scene. They immediately went over to the area where Officer Surlow and Hernandez were standing to check on the safety of the officer. Officer Surlow informed these officers that Hernandez had walked away from the parked vans. At that point, Officers Snyder and Duckworth walked over to the vans whose back doors were still open. There, in plain view, the officers saw an air-conditioning unit and an air-conditioning handler that appeared to be new. Both of the units had tags on them indicating an address different from the apartment complex. The electrical lines of the units appeared to have been torn or forcibly cut. The officers also found a hacksaw and crowbar in one of the vans. Thereafter, these officers went to the address indicated on the tags to the air-conditioning units and discovered that the units had been stolen. While in custody, Hernandez later confessed to stealing these units.
Hernandez was charged with burglary, grand theft, and possession of burglary tools. Prior to trial, Hernandez moved to suppress his confession on the grounds that Officer Surlow had no reasonable suspicion to initially stop him in the parking lot. The trial court denied the motion apparently on the grounds that based upon the time of the incident, the immediate *1131 exodus of the individuals from the area upon seeing the police, and the court's sua sponte finding that there was a violation of the right of way by one of the parked vans at the time of the incident, the police had reasonable suspicion to stop Hernandez. With all due respect to the trial court and the majority, I cannot agree.
First and foremost, as the majority correctly observes, albeit in a footnote, the anonymous tip received by the police in this case was legally insufficient to give rise to a reasonable suspicion necessary to justify the stop. Majority opinion, n. 1. It is clearly established that, "`an anonymous tip can give rise to a reasonable suspicion sufficient to justify the temporary detention of a citizen,' `when the tip, as corroborated by independent police work, exhibits sufficient indicia of reliability to furnish police with a reasonable suspicion that the defendant is engaged in criminal activity.'" R.A. v. State, 725 So.2d 1240, 1241 (Fla. 3d DCA 1999) (citation omitted); see also L.M. v. State, 694 So.2d 118, 119 (Fla. 3d DCA 1997). Here, the anonymous tip was neither specific nor corroborated by the police in any significant fashion. Thus, it is undisputed that the contents of the anonymous tip, in this case, cannot be considered in our determination of whether Officer Surlow had a founded suspicion to stop Hernandez. I, therefore, completely agree with the majority that the resolution of the suppression motion depends solely upon whether the independent observations made by the seizing officer at the scene were sufficient to give rise to a reasonable suspicion that Hernandez had committed, was committing, or was about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county pursuant to section 901.151(2), Florida Statutes (1997).
As I see it, the flaw in the majority's holding is that while it correctly acknowledges that the contents of the anonymous tip in this case may not be considered for purposes of a determination of reasonable suspicion, the majority then proceeds to do just that. That is, if we ignore the contents of the tip, as we must, what then did Officer Surlow independently observe when he arrived at the parking lot that led him to reasonably suspect that a crime had been committed, was being committed or was about to be committed, thus justifying a lawful stop and detention of the appellant or the three other individuals? See Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sibron v. New York, 392 U.S. 40, 62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Popple v. State, 626 So.2d 185, 186 (Fla.1993); § 901.151, Fla. Stat. (1997). It is clear that Officer Surlow only saw four individuals standing around two vans parked back-to-back in the parking lot of an apartment complex at 3:00 a.m. who, for whatever reason(s), did not desire to speak to him. The majority posits that although this parking arrangement and the appellant's activity might not arouse suspicion during daylight hours, it does at 3:00 in the morning. Majority at 4. A fortiori then the majority concludes that the officer properly had reasonable suspicion based upon the time of day coupled with the subsequent attempt at flight by Hernandez. Id. at 4-5, 88 S.Ct. 1868.
This is where I part company with the majority because established Florida law has long invalidated time of day and/or flight, without more, as reasons for investigatory stops.[5]See Pritchett v. State, 677 *1132 So.2d 317, 320 (Fla. 1st DCA 1996) (holding that "`[e]ven assuming the individuals' attempts to "walk off in different directions" could be said to constitute flight, the case law is clear that flight alone, even in a high crime area, does not give rise to a founded suspicion sufficient to justify a detention.'") (quoting L.D.P. v. State, 551 So.2d 1257, 1258 (Fla. 1st DCA 1989)); see also Brown v. State, 636 So.2d 174, 175 (Fla. 2d DCA 1994) (flight at sight of police officers in high drug area in early morning hours does not establish reasonable suspicion); Grant v. State, 596 So.2d 98, 99 (Fla. 2d DCA 1992) (reasoning that "[t]he fact that a person in a high crime area flees at the sight of an officer does not constitute a reasonable suspicion."); Hill v. State, 561 So.2d 23, 24 (Fla. 3d DCA 1990) (holding that "[t]he fact that the defendant was standing in the roadway at 5:00 AM in a high crime residential area and that he walked away into the darkness upon seeing the approaching police car, did not provide police more than a bare hunch that criminal activity was afoot.") (citation omitted); Levin v. State, 449 So.2d 288, 289 (Fla. 3d DCA 1983) (concluding that "[i]t has long been recognized in this state that being out on the public street during late and unusual hours cannot constitute a valid basis to temporarily detain and frisk an individual under the stop and frisk law."), approved, 452 So.2d 562 (Fla.1984).
In all of the cases cited by the majority, there were additional compelling or suspicious circumstances which provided the police with reasonable suspicion to justify the nonconsensual stop. See, e.g., Jenkins v. State, 685 So.2d 918 (Fla. 1st DCA 1996) (officer had well-founded suspicion of criminal activity justifying stop of bicyclist who at 12:55 a.m. was riding in a closed business district carrying a bag, the size and shape of contents of which were consistent with the type of products sold at one of the businesses which had recently been burglarized); State v. Russell, 659 So.2d 465 (Fla. 3d DCA 1995) (same); Brown v. State, 592 So.2d 1237 (Fla. 1st DCA 1992) (police had founded suspicion of criminal activity at 3:00 a.m. based upon tip from reliable informant that black male in company of black female was selling crack cocaine at a certain corner in an area known for its drug transactions and police found suspect at location who fit description given by informant and police saw black suspect and companion enter car with white driver in predominantly black neighborhood); Thornton v. State, 559 So.2d 438 (Fla. 1st DCA 1990) (officer had reasonable suspicion of criminal activity sufficient to justify an investigatory stop at 8:30 p.m. where officer observed defendant showing something to another man in an outstretched, cupped hand on a street corner known for drug activity and when the officer approached, the defendant quickly turned his back and put hands in his groin area); State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989) (officers manifested reasonable suspicion to carry out investigatory stop due to their observations of all of the circumstances at the scene, including the fact that appellee was seen holding a box at 1:00 a.m. in a high-crime, narcotics area that was posted against trespassing, and that upon seeing the officers, he dropped the box and fled); Johnson v. State, 547 So.2d 699 (Fla. 1st DCA 1989) (reversing denial of suppression motion where officer said her attention was drawn to appellant because he was better-dressed than persons commonly seen in the area, and that she called the appellant to return simply because he and his companions halted their former relaxed conversation and *1133 walked briskly away as the code name for police ran out about the streets); State v. Kibbee, 513 So.2d 256 (Fla. 2d DCA 1987) (police justified in temporarily detaining defendant at 1:40 a.m. where defendant and another occupied car parked in a manner indicating that it was one of the cars for sale at a used car lot which was closed for business; the officer knew that there had previously been automobile thefts and burglaries in the area; and where both occupants of the car were slouched down in such a manner that they appeared to be trying to avoid detection); State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980) (where defendant was observed at 4:30 a.m. peering into the first floor window of an apartment building from an alley in a high-crime area and fled upon seeing police, police were authorized to stop and detain defendant); see also Manuel v. State, 526 So.2d 82 (Fla. 4th DCA 1987) (defendant's flight along with officer's knowledge that bag defendant left when he fled contained concealed firearm was justification for an arrest); State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988) (affirming trial court's granting of motion to suppress and holding that flight along will not justify a stop and the fact that defendant was in a high crime area does not constitute an additional suspicious circumstance such as will elevate the stop to the level of legality);
Cobb v. State, 511 So.2d 698, 699-700 (Fla. 3d DCA 1987) (reversing denial of suppression motion and holding "[a]lthough we decide here that (a) running from the police (b) in a high crime area together do not justify an investigative stop, we have grave doubts that any weight whatsoever should be given to the high crime area setting"); State v. Smith, 477 So.2d 658 (Fla. 5th DCA 1985) (officer's observation of defendants sharing something out of brown paper bag near dumpster area generally used only by store employees, in area of recent burglaries and defendant's flight upon seeing officer was sufficient to create founded suspicion for stop).
In this case, unlike the facts of the panoply of cases just described and relied upon by the majority, but for the contents of the invalid anonymous tip, there is no record evidence that the police had any prior knowledge of any criminal activity afoot or reason to believe that criminal activity was afoot at this apartment complex or its parking lot. Officer Surlow candidly testified that he stopped Hernandez solely upon the anonymous tip and Hernandez's evasive actions.[6] Officer Surlow independently observed nothing at the parking lot to corroborate the contents of the anonymous tip that a car burglary was in progress. Moreover, neither the seizing officer or the majority can articulate why there is anything unusual, sinister or illegal about two vehicles temporarily parked back-to-back (or front-to-front for that matter) in a parking lot at any hour in our realm of everyday experience. Thus, when this tip is properly factored out of our analysis, Officer Surlow, at best, was acting upon a mere hunch that Hernandez was involved in criminal activity due to Hernandez's evasive actions. It bears repeating that the stolen air conditioning units were not discovered by the other police officers until after Officer Surlow had seized Hernandez and taken him into custody. The subsequent discovery of this incriminating evidence by other police officers simply does not vitiate the illegality of the initial stop *1134 of Hernandez by Officer Surlow. See Libby v. State, 561 So.2d 1253 (Fla. 2d DCA 1990); Kimbrough v. State, 539 So.2d 619 (Fla. 4th DCA 1989); Rozier v. State, 368 So.2d 379 (Fla. 3d DCA 1979).
Contrary to the majority, I find this case to be virtually indistinguishable from our decision in L.M. v. State, 694 So.2d 118 (Fla. 3d DCA 1997). There, as here, a police officer received a radio dispatch of an anonymous tip of a car burglary in progress. Specifically, the anonymous tipster indicated that two African American youths were burglarizing a car in a fenced area in a church parking lot and gave a clothing description of the youths. 694 So.2d 118. As in this case, the responding police officer was only a short distance away and arrived to the scene within one minute of the call. Id. The officer observed the youths wearing clothing fitting the BOLO description, walking on the sidewalk adjacent to the church. Id. As in this case, the police officer testified that she did not observe the youths involved in any criminal activity, nor as in this case, was there any circumstantial evidence of a car theft. Moreover, as in this case, the youths attempted to evade the officer as the officer approached. After correctly finding the anonymous tip to be insufficient to give rise to reasonable suspicion to justify a temporary stop due to the fact that it lacked any police corroboration, we reversed the trial court's denial of L.M.'s motion to suppress. In accordance with our holding in L.M., the same result should be obtained in this case. With all due respect, I find the majority's attempt at distinguishing L.M. to be specious at best.[7]
Since the trial court also relied upon a possible traffic infraction as a justification for the stop, I think that this issue should also be briefly addressed. The trial court, sua sponte, concluded that there was a violation of the right-of-way by one of the parked vans. Section 316.2045 provides:
It is unlawful for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of vehicles or pedestrians traveling thereon; and any person or persons who violate the provisions of this subsection, upon conviction, shall be cited for a pedestrian violation, punishable as provided in chapter 318.
§ 316.2045(1), Fla. Stat. (1997) (Emphasis added). Though there was testimony presented at the hearing that one of the vans was "in the right of way," there was no evidence that one of the vans blocked a public road. In fact, the evidence revealed that the van merely blocked, if at all, the private parking lot to this apartment complex. Moreover, there was absolutely no evidence that the van was "impeding, hindering, stifling, retarding, or restraining traffic" at 3:00 in the morning. Thus, contrary to the trial court's conclusion, there was no statutory traffic violation *1135 which would have otherwise provided the police with founded suspicion for this stop.
Nor can the stop in this case be deemed consensual as the state argues on this appeal. The undisputed record evidence is that Hernandez came over to Officer Surlow only after the officer shined his flashlight on him and commanded Hernandez to come over. Under such circumstances, no reasonable person would have felt free "to disregard the police and go about his business." Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (citation omitted); see also Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
In conclusion, it is clear to me that there was absolutely no reasonable basis for the nonconsensual stop and detention of Hernandez in this case. This stop was premature and at best, was based solely upon a hunch by the officer that criminal activity was afoot due to Hernandez's attempted flight. Recently in its decision of People v. Wardlow, the Illinois Supreme Court held that flight alone in a high crime area was insufficient to justify a Terry stop. In so holding, the high court poignantly observed that:
A prime concern underlying the Terry decision is protecting the right of law-abiding citizens to eschew interactions with the police. Authorizing the police to chase down and question all those who take flight upon their approach would undercut this important right and upset the balance struck in Terry between the individuals right to personal security and the public's interest in prevention of crime.
701 N.E.2d at 486. If Hernandez, or anyone else for that matter, was not at liberty to eschew contact with the police at 3:00 a.m. under the truly innocuous factual circumstances observed by the seizing officer in this case, as the majority opinion holds, then it seems to me that this opinion has effectively sounded a death knell to the idea of any consensual encounter under the fourth amendment and Terry in the third district. I therefore dissent.
NOTES
[1] Defendant argues that the contents of the dispatcher's report of suspicious activity in the parking lot should not be considered in deciding whether there was a founded suspicion. Under the circumstances of this case, we agree. See R.A. v. State, 725 So.2d 1240, 1242 (Fla. 3d DCA 1999), review denied, 741 So.2d 1137 (Fla.1999); L.M. v. State, 694 So.2d 118, 119 (Fla. 3d DCA 1997). The record does not reveal the identity of the person who called the police, nor did the State adduce evidence from which the identity of the caller could be gleaned. Cf. State v. Gonzalez, 682 So.2d 1168, 1172 (Fla. 3d DCA 1996) (tape recording of 911 call revealed that the source was a neighbor of the home being burglarized). The analysis in the present case boils down to the question whether the conduct observed by the police at the apartment complex gave rise to a founded suspicion.
[2] The record suggests alternative bases on which the trial court's ruling might conceivably be sustained, but the parties have not addressed them and we need not reach them. These include (1) whether the stolen air conditioners were properly seized in any event because the witnesses testified they were in plain view; (2) whether all or part of the search was sustainable alternatively because defendant was arrested on the outstanding warrant for driving under the influence; and (3) whether the search was sustainable and/or statements properly admitted in any event because when the officers began questioning the defendant's sister (whose van it was) defendant spontaneously told the officer that he was responsible and that the sister had no part in the theft.
[3] Although it makes no difference to the outcome of the present case, we note that the First District disagrees with this court's decision in Hierro v. State. See Calliar v. State, 714 So.2d 1134 (Fla. 1st DCA), review granted, 727 So.2d 903 (Fla.1998). The First District reads the burglary tool statute, section 810.06, more broadly than this court does. See 714 So.2d at 1135. Under this court's decision in Hierro (and, we believe, the Florida Supreme Court's decision in Thomas ) a burglary tool must be possessed with intent to commit a burglary or trespass as the statute says. The First District in Calliar took the position that a burglary tool can also be one which the defendant intends to use to commit a theft inside the burglarized or trespassed-upon premises, even though the tool was not possessed with intent to commit the burglary or trespass. See 714 So.2d at 1135.

We decline to certify conflict because resolution of the conflict would make no difference in the present case. If the evidence is legally sufficient under this court's narrower reading of section 810.06, Florida Statutes, then it necessarily is sufficient under the First District's broader reading of the same statute.
[4] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[5] It should be pointed out that the United States Supreme Court has recently accepted review of Illinois v. Wardlow, 526 U.S. 1097, 119 S.Ct. 1573, 1573-74, 143 L.Ed.2d 669 (1999), to resolve conflicting decisions in various jurisdictions about the issue of whether flight from a clearly identifiable police officer, who is patrolling a high crime area, is sufficient to justify an investigatory stop under Terry. A majority of jurisdictions addressing this issue have found flight alone to be insufficient. See People v. Wardlow, 183 Ill.2d 306, 233 Ill.Dec. 634, 701 N.E.2d 484, 486 (1998) (citations omitted).
[6] At the suppression hearing, when asked why he had stopped Hernandez, Officer Surlow testified that:

Based on the call we were receiving of suspicious activity and finding the van[s] back to back. And which as I asked him to approach me, he basically was walking towards the apartment complex attempting to avoid coming towards me.
[7] The majority contrasts L.M. with this case by summarily concluding that here "the police observed unusual activity at an unusual hour which gave rise to a reasonable suspicion of criminal activity." Majority Op. at 6. The very fact that the majority opinion cannot specifically articulate the "unusual activity" which gave rise to the purported reasonable suspicion only serves to highlight why its holding is problematic. See Terry, 392 U.S. at 30, 88 S.Ct. 1868 (holding that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause). (emphasis added).