# Third District Court of Appeal

## State of Florida

Opinion filed April 20, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2574
Lower Tribunal No. 12-2919
_____

**Albert Cole,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Stacy D. Glick, Judge.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Brent J. Kelleher, Assistant Attorney General, for appellee.

Before ROTHENBERG, EMAS and FERNANDEZ, JJ.

EMAS, J.

**INTRODUCTION**

Appellant, Albert Cole ("Cole"), appeals from the final judgment of conviction and sentence on the basis that the court erred in denying Cole's motion to suppress physical evidence, and in denying three challenges for cause during jury selection. On appeal, the State commendably concedes that the trial court committed reversible error in at least one of its denials of the for-cause challenges, warranting a new trial. Upon our review of the record, we agree and reverse for a new trial. We nevertheless address the first issue, and hold that the trial court properly denied the motion to suppress because the defendant voluntarily abandoned the drugs found under the defendant's car, and the police inevitably would have discovered the drugs found on defendant's person.

**FACTS**

Cole was charged with trafficking in cocaine, tampering with evidence[1] and possession of drug paraphernalia after a traffic stop. The defense filed a motion to suppress the evidence found during the traffic stop. At the suppression hearing, the following relevant testimony was presented:

Officer Rosa Olivo was on patrol during the evening of February 3, 2012 when she saw a car with a faded and illegible temporary tag, as well as a tinted film covering the brake lights, making it impossible to determine if the vehicle's

---

[1] The State eventually nolle prossed this count prior to trial.

lights were on. Before Officer Olivo could initiate a stop of the car, the driver suddenly turned into the opposite lane of traffic without signaling and parked in the grassy swale. Officer Olivo activated her lights and siren, exited her car, and began walking toward the car. Cole was the driver and only occupant of the car. As Officer Olivo headed toward Cole's car, Cole began to exit his car. Officer Olivo told Cole to remain inside. Cole handed Olivo his license and registration, and Officer Olivo described Cole as very nervous, sweating and stuttering. In response to her questions, Cole told Officer Olivo he was going to meet a "good friend" who lived nearby, but when asked, Cole could not provide the friend's name. Given Cole's behavior, Officer Olivo requested backup.

Officer Lisa Lobello arrived as backup within a few minutes of Officer Olivo's request. Upon Lobello's arrival, Officer Olivo returned to her police vehicle to conduct further investigation related to the traffic stop. Officer Lobello engaged in small talk with Cole, who was still seated in his car. Officer Lobello described Cole as looking past her as they spoke, as if he was "visually trying to clear an area." Cole informed Officer Lobello that he was on parole. Cole was sweating, bouncing his legs up and down, and looked afraid. Both of his hands were clenched in fists, and he was tightly gripping an ink pen in his right hand. This caused concern for Officer Lobello, who believed that the pen was being held in such a way that it could be used as a weapon. Officer Lobello asked Cole to

3

step out of his car so she could conduct a patdown search. She grabbed his wrist before he stepped out of the car and shook the pen out of his hand, then helped Cole out of the car. While taking him out of the car, Lobello twisted Cole's arm and turned him around so he was facing away from her and toward his own car. As she turned him around, Officer Lobello saw Cole flick his wrist. Lobello saw dust rising from the dirt ground and believed Cole had thrown something under the car. Lobello asked Cole if he had thrown something, but Cole said no. Officer Lobello put Cole up against his car and handcuffed him in order to pat him down. Lobello felt what seemed like plastic bags inside Cole's pocket, but she could not tell whether they were empty. She asked Cole what she was feeling and Cole said they were plastic bags. Officer Lobello removed the bags from Cole's pocket. They appeared empty, and Lobello did not see any drug residue inside the bags.

A third officer arrived at the scene who searched Cole more thoroughly. Inside of Cole's sock the officer found a bag containing crack cocaine and a bag of powder cocaine. A K-9 officer came to the scene and searched the area under Cole's car. The police retrieved additional bags of crack cocaine. Inside Cole's car police found additional empty bags matching those found in Cole's pocket.

Following this testimony, the defense argued Lobello did not have reasonable suspicion that Cole was armed with a dangerous weapon, thereby rendering the patdown illegal. The defense also argued that pulling the baggies out

4

of Cole's pocket was unlawful, because it was not immediately apparent from the patdown search that Cole had a weapon or contraband on his person.

The State argued, inter alia, that the drugs would have been inevitably discovered. The defense contended that the inevitable discovery doctrine did not apply, given that Cole's action in throwing the drugs did not occur until after Lobello ordered Cole out of the car for the patdown, grabbed his wrist, twisted his arm, and turned him around. The defense asserted that Cole's action in throwing away the contraband amounted to involuntary abandonment, made in response to an unlawful seizure.

### ANALYSIS

We apply a mixed standard of review to an appeal of an order on a motion to suppress. We must "defer to the trial court's factual findings so long as the findings are supported by competent, substantial evidence, and review de novo the legal question. . . ." State v. Hankerson, 65 So. 3d 502, 506 (Fla. 2011). The evidence must be construed in a manner most favorable to sustaining the ruling below. Cotton v. State, 901 So. 2d 241 (Fla. 3d DCA 2005).

Cole concedes the initial traffic stop was lawful. Thus, the first issue we must address is whether Officer Lobello had reasonable suspicion to conduct the subsequent patdown search of Cole. Florida's stop and frisk law requires "not probable cause but rather a reasonable belief on the part of the officer that a person

5

temporarily detained is armed with a dangerous weapon." State v. Webb, 398 So. 2d 820, 824 (Fla. 1981); see also J.L. v. State, 727 So. 2d 204 (Fla. 1998).

Section 901.151(5), Florida Statutes (2012) (entitled "Stop and Frisk Law"), provides:

> Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom the officer has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.

The use of the term "probable cause" in the context of a stop and frisk, has been construed to mean "articulable suspicion," "reasonable belief," or "founded suspicion." Webb, 398 So. 2d at 826; Smith v. State, 719 So. 2d 1018, 1022 n. 1 (Fla. 3d DCA 1998). And as the Florida Supreme Court has held, "[a] 'founded suspicion' is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in light of the officer's knowledge." Hunter v. State, 660 So. 2d 244, 249 (Fla. 1995). In State v. Cruse, 121 So. 3d 91 (Fla. 3d DCA 2013), this court set forth the factors that may be considered by officers

> to arrive at a reasonable suspicion that a crime is being or is about to be committed and to support the investigatory stop or detention of a suspect:

6

> The time; the day of the week; the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer's knowledge.
>
> To this list may be added the factor of flight.

Cruse, 121 So. 3d at 97-98 (quoting Hernandez v. State, 784 So. 2d 1124, 1126 (Fla.

3d DCA 1999)).

Additionally, "[n]ervous, evasive behavior is another pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). "Reasonable suspicion can exist even though the suspicious activity is consistent with innocent activity." Hernandez, 784 So. 2d at 1126.

Here, in light of the totality of circumstances, we conclude there was reasonable suspicion to justify a patdown search of Cole. The stop occurred at approximately 9 p.m. The officer noticed that Cole was sweating, appeared nervous, was fidgety (bouncing his legs up and down), and his fists were tightly clenched. He could not answer some of the officer's questions, and though he said he was going to see a "good friend," Cole could not provide the friend's name or address. Further, just prior to the stop, Cole had made a sudden U-turn into oncoming traffic lanes and parked in a swale facing the wrong direction. Finally,

7

Cole had a pen clenched tightly in one of his hands when the officer approached and initiated contact with him.

The case at hand is distinguishable from State v. Herron, 68 So. 3d 330 (Fla. 3d DCA 2011) on which Cole relies in his brief. In Herron, the State argued:

> the pat-down was lawful because Herron appeared "excruciating[ly] nervous, fidgety," could not produce a driver's license, proof of insurance, or car registration, and appeared to be "looking out the window [for] an avenue of escape." The State further point[ed] out that the officer did not feel comfortable returning to his vehicle to run a DAVID System identification or mug shot system identification of the defendant under the circumstances.

This court determined in Herron that this series of events was "insufficient to justify a pat-down when there is no additional articulable suspicion the person is armed with a dangerous weapon." Id. at 331. The instant case presents additional factors not present in Herron, such as Cole's inability to answer the officer's simple questions, his failure to make eye contact with the officer (and appearing to visually clear an area behind the officer), his abrupt turn of the car into oncoming traffic and improper parking, and his tight grasp on a pen in a manner which caused the officer to believe it could be used as a weapon.

Additionally, this case is distinguishable from Davis v. State, 67 So. 3d 1125 (Fla. 5th DCA 2011). In Davis, the officer initiated a consensual encounter with the defendant, who was standing in a "high-crime" area with several other individuals. The officer observed that the defendant had a pocketknife clipped into

8

one of his pants pockets. The officer proceeded to secure the pocketknife and "considered it necessary to patdown for weapons just … for [his] own safety…" Id. at 1126. There were no other reasons articulated for the patdown, and simply having a pocket knife clipped to one's pocket does not, without more, provide reasonable suspicion to justify a patdown search.

This is far different from our situation, where officers were presented with a number of additional circumstances justifying the patdown search. Further, given the manner in which Cole was carrying and displaying the pen when the officer approached and engaged with Cole, the officer had a reasonable belief that the pen could be used in a manner to inflict harm on the officer. Based on the totality of the circumstances, we hold there was reasonable suspicion to justify the patdown search of Cole.

Cole contends that, even if the initial patdown search was justified, the officer exceeded the limited scope of a patdown for weapons, resulting in a full and unlawful search and the discovery of cocaine in his sock. Although we agree that the officer exceeded the limited scope of a patdown search, we nevertheless conclude that the evidence is not subject to suppression because the drugs found in Cole's sock would have inevitably been discovered.

As a general rule, evidence from an unreasonable search or seizure is inadmissible. United States v. Wade, 388 U.S. 218 (1967). The exclusionary rule

was created to deter deliberate, reckless, or grossly negligent police misconduct. Herring v. United States, 555 U.S. 135, 144 (2009). As the United States Supreme Court held in Herring: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id.

Inevitable discovery is a recognized exception to the exclusionary rule and requires the State to establish that "the evidence would have inevitably been discovered in the course of a legitimate investigation." Moody v. State, 842 So. 2d 754, 759 (Fla. 2003). See also Nix v. Williams, 467 U.S. 431, 444 (1984) (recognizing and adopting the inevitable discovery exception to the exclusionary rule, and holding that the exclusionary rule should not apply if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means"). In other words, given the evidence presented, "the case must be in such a posture that the facts already in the possession of the police would have led to this evidence notwithstanding the police misconduct." Moody, 842 So. 2d at 759.

The inevitable discovery exception applies in the instant case and renders admissible the evidence seized. The initial stop of Cole was lawful and, as discussed, there was reasonable or articulable suspicion for the officer to conduct a patdown search. Although the patdown search ultimately exceeded its proper

scope, resulting in the seizure of empty plastic bags from Cole's pocket and the subsequent seizure of cocaine from his sock, this is not the end of our analysis. [2] The critical fact remains that, while Cole was being removed from his car during the course of a lawful investigation, and before the actual patdown search commenced, Cole flicked his wrist and threw drugs underneath the car. This act by Cole, occurring while the officer was attempting to remove Cole out of his car, constituted a voluntary abandonment of the drugs in his hand. See State v. Oliver, 368 So. 2d 1331 (Fla. 3d DCA 1979). We reject the defense argument that Cole's action was an involuntary act and the product of an unlawful seizure of Cole. Officer Lobello was acting lawfully at the time Cole flicked his wrist and threw the drugs under the car; Officer Lobello's actions in removing Cole from the car and

---

[2] We agree with Cole that Officer Lobello's subsequent search of Cole exceeded the scope of a patdown search, given that she felt empty bags and removed them from Cole's pocket. A patdown search is conducted for the purpose of discovering "a dangerous weapon." § 901.151(5), Fla. Stat. See also Harford v. State, 816 So. 2d 789 (Fla. 1st DCA 2002). If during the course of a proper patdown search, the officer feels an object whose incriminating nature is immediately apparent, that too may be lawfully seized. Minnesota v. Dickerson, 508 U.S. 366 (1993) (adopting the "plain feel" doctrine to permit seizure of such items during an otherwise lawful patdown search); Griffin v. State, 150 So. 3d 288 (Fla. 1st DCA 2014). However, the patdown search here revealed neither of these, but merely what felt to the officer like "empty plastic bags." Being neither a weapon nor immediately identifiable as contraband, Officer Lobello exceeded the scope of a patdown search by removing these items from Cole's person and then conducting a full search of Cole's person which revealed cocaine in his sock. Ordinarily, the empty bags and drugs found on his person would be subject to suppression, as they were seized as a result of a search that exceeded the scope of a limited patdown search. As we explain, however, under the facts of this case, the inevitable discovery exception renders this evidence admissible.

11

twisting his arm to remove the pen and to turn Cole around to face the car were reasonable actions in preparation for a safe and proper patdown search.

Because Cole voluntarily abandoned these drugs by throwing them underneath the car, that evidence was properly and lawfully seized by the police, and in fact constituted no Fourth Amendment search at all. Oliver, 368 So. 2d 1331 (Fla. 3d DCA 1979). That the abandoned drugs were seized only after a full (and unlawful) search of Cole revealed other drugs on his person is not determinative here. Had the officers, for example, immediately looked underneath the car (instead of awaiting the arrival of a K-9 unit) they would have found the bags of cocaine abandoned by Cole, arrested Cole for possession of those drugs, and conducted a full (and lawful) search of his person incident to arrest, resulting in the inevitable discovery and seizure of the cocaine in his sock. Under these circumstances, the exclusionary rule does not apply and the trial court correctly denied the motion to suppress.

## CONCLUSION

Given that Officer Lobello was acting in the course of a lawful investigation at the time she removed Cole from the car to prepare to conduct a patdown search for weapons, Cole's actions in flicking the bag of drugs underneath his car constituted a voluntary act of abandonment, and the seizure of those drugs was lawful. The fact that these drugs were recovered after the search of Cole's person

12

revealed drugs in his sock is of no moment, as the seizure of the drugs underneath the car was lawful and not the product of any police misconduct. Under these circumstances, the drugs already found on Cole's person would have inevitably been discovered in the course of a lawful search incident to arrest and are thus not subject to suppression.

Reversed in part, affirmed in part, and remanded for a new trial.