# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2024-1647
Lower Tribunal No. 2022CJ000305XX

_____

S.M.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Polk County.
William D. Sites, Judge.

September 26, 2025

WOZNIAK, J.

S.M. appeals the trial court's order withholding adjudication of delinquency and placing her on probation for resisting an officer without violence and battery on a law enforcement officer.[1]  S.M. argues that the trial court erred (1) in denying her motion to dismiss both charges where the evidence showed that the officers were not

_____

[1] Upon finding that a child has committed a delinquent act or violation of law, a court has the discretion to withhold adjudication of delinquency.  § 985.35(4), Fla. Stat. (2022).

in the lawful performance of their duties when the charged offenses occurred; and (2) in denying her motion to correct disposition error, which challenged seven conditions of probation. We reject her first argument and affirm the portion of the order finding S.M. guilty and withholding adjudication of delinquency. As for S.M.'s challenges to her various conditions of probation, we find merit only in her argument directed to a portion of Condition 7. Accordingly, we affirm in part, reverse in part, and remand for the trial court to strike the portion of the probation order as discussed below and to correct a scrivener's error.

S.M.'s father reported to deputies that S.M., who had turned twelve years old just six days earlier, had "gone missing, run away." S.M.'s father and others had been looking for her for several hours, without success. He thereafter reported S.M. missing and explained to law enforcement that she liked to hang out at an abandoned building in Winter Haven.

When deputies arrived at the subject abandoned building, they spotted S.M. and other juveniles inside, who saw them and took off running out the back. One deputy was able to catch S.M. S.M. struggled, flailed, cursed at the deputies, and threatened to run away again. The deputies decided to handcuff her to put her in the car. As the deputies walked to the car with her between them, S.M. kicked one of the deputies. S.M. was charged with resisting an officer without violence and battery on a law enforcement officer. The court denied S.M.'s motion for judgment of

2

dismissal, found S.M. guilty of the two offenses, withheld adjudication, and placed S.M. on probation.

We apply a de novo standard of review to the order denying the motion for judgment of dismissal. See X.B. v. State, 337 So. 3d 99, 101-02 (Fla. 3d DCA 2021). All evidence, and the reasonable inferences from the evidence, are to be construed in favor of the State. Id.

We begin our analysis with the observation that both of the offenses with which S.M. was charged, resisting without violence and battery on a law enforcement officer, require the deputies' engagement in the lawful performance of a legal duty when the offenses occurred. § 784.07(2)(b), Fla. Stat. (2021) ("Whenever any person is charged with knowingly committing . . . battery upon a law enforcement officer . . . while the officer . . . is engaged in the lawful performance of his or her duties, the offense for which the person is charged shall be reclassified . . . [to a third-degree felony]."); § 843.02, Fla. Stat. (2021) (stating that a person who "resist[s], obstruct[s], or oppose[s] any officer . . . in the lawful execution of any legal duty" without violence is guilty of the offense of resisting an officer without violence, a first-degree misdemeanor).

S.M. asserts that the deputies were not, in fact, engaging in the lawful performance of a legal duty when the incident occurred. Specifically, she argues that the deputies overreacted and exceeded the scope of their lawful duties when they

detained and handcuffed her. In her view, once the deputies determined she was where her father suspected she might be, the only lawful act the deputies could have performed was to report back to her father that they had located her at the vacant house. S.M. posits that the "only possible reason" the deputies chased her when she fled the house upon seeing them was that she ran from them. She cites caselaw for the proposition that flight alone does not give a founded suspicion to justify a detention. See, e.g., Robinson v. State, 885 So. 2d 951, 954 (Fla. 1st DCA 2004) ("[F]light alone is not a proper basis for a founded suspicion of criminal activity as would justify an arrest, or even an investigatory stop."); Hernandez v. State, 784 So. 2d 1124, 1127 (Fla. 3d DCA 1999) ("Defendant's attempt to leave the area when he saw the police officer was not, by itself, enough to create a reasonable suspicion. However, flight can be considered when there are other suspicious circumstances." (citation omitted)).

We disagree because S.M.'s running was not what triggered the deputies to detain her and was, in fact, immaterial. The deputies were actively looking for S.M. so that they could take her into temporary custody and return her to the custody of her father, who had reported that she was a missing, runaway child. They were going to temporarily detain her once they found her, regardless of whether she ran.

The question is whether the deputies had the lawful authority to take temporary physical control of S.M. to return her to her father. That answer is "yes."

4

Section 984.13(1)(a), Florida Statutes (2021), expressly authorizes law enforcement to take a child into custody "when the officer has reasonable grounds to believe that the child has run away from his or her parents, guardian, or other legal custodian." [2] Here, there were reasonable grounds to believe S.M. had run away because her father had reported her as a missing, runaway child. Because the deputies had reasonable grounds for their belief, the deputies were engaging in the lawful execution of a legal duty when they located S.M. and took her into temporary custody; this was a legitimate use of law enforcement authority.[3] Accordingly, the State properly charged S.M. with resistance and battery.

We turn now to S.M.'s challenges to the conditions of her probation. Because her motion to correct the claimed errors involves purely legal issues, we review her claims under the de novo standard. See D.B. v. State, 321 So. 3d 951, 952 (Fla. 1st DCA 2021).

Because the court withheld adjudication of delinquency, section 985.35, Florida Statutes (2021), governs. Under that statute, the court could impose

---

[2] "Taken into custody" is defined as "the status of a child immediately when temporary physical control over the child is attained by a person authorized by law, pending the child's release . . . ." § 984.03(52), Fla. Stat. (2021).

[3] Even absent the statute, the deputies' actions were a proper exercise of their community caretaking function. See R.A. v. State, 355 So. 3d 1028, 1035 n.4 (Fla. 3d DCA 2023) (concluding detention of minor was "reasonable purely as a community caretaking function").

conditions of probation that have a penalty component and those that have a rehabilitative component. § 985.35(4)(a), Fla. Stat. The penalty component may consist of "restitution in money or in kind, community service, a curfew, urine monitoring, revocation or suspension of the driver license of the child, or other nonresidential punishment appropriate to the offense . . . ." Id. The rehabilitative component may consist of "a requirement of participation in substance abuse treatment, or school or other educational program attendance." Id.

While the language of the statute is rather broad, Florida Rule of Juvenile Procedure Form 8.947, "Disposition Order—Delinquency," provides more guidance by identifying the following as general conditions of juvenile probation:

> 1. The child must obey all laws.
> 2. The child must be employed full-time or attend school with no unexcused absences, suspensions, or disciplinary referrals.
> 3. The child must not change or leave .....his/her.... residence, school, or place of employment without the consent of .....his/her..... parents and juvenile probation officer.
> 4. The child must answer truthfully all questions of .....his/her..... juvenile probation officer and carry out all instructions of the court and juvenile probation officer.
> 5. The child must keep in contact with the juvenile probation officer in the manner prescribed by the juvenile probation officer.
> 6. The child must not use or possess alcoholic beverages or controlled substances.

Courts are not restricted to imposing general conditions; they can also impose any special condition necessary to implement the rehabilitation plan as long as it meets

6

the standard articulated in <u>Biller v. State</u>, 618 So. 2d 734, 734-35 (Fla. 1993) ("[A] condition is invalid if it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." (quoting <u>Rodriguez v. State</u>, 378 So. 2d 7, 9 (Fla. 2d DCA 1979))).[4]

We test S.M.'s conditions of probation against this law and conclude that her challenge to Condition 7 has merit to the extent we discuss below.

The challenged portions of Condition 7 require that S.M. "not frequent any place where illegal drugs or alcohol are sold or distributed" and that she "[s]ubmit to random screens to determine usage at the req[uest] of [Juvenile Probation Officer], [Law Enforcement Officer], treatment provider." S.M. makes a three-pronged challenge to the first portion of the condition, arguing that: (1) it is overbroad because it precludes her from going to a number of restaurants, grocery stores, drug stores, and other legitimate businesses; (2) it is improper because it can be violated unintentionally; and (3) it fails to meet <u>Biller</u> because it is unrelated to the offenses for which she was convicted, it does not relate to criminal conduct, and it does not forbid conduct that is reasonably related to future criminality. We agree.

---

[4] Form 8.947 also sets out a list of special conditions of juvenile probation from which a court may choose.

Although the court could properly prohibit S.M., a minor, from using or possessing illegal drugs or alcohol, which are general conditions of juvenile probation, the prohibition against frequenting any place where illegal drugs or alcohol are sold or distributed is overbroad. See Dean v. State, 629 So. 2d 1106, 1106 (Fla. 4th DCA 1994) (striking condition forbidding defendant from entering "any places that sell alcohol" as overbroad and subject to being violated unintentionally "such as by entering a grocery store or a gas station"). The condition could be violated innocently, as there is no requirement S.M. have knowledge of alcohol being sold when she visits a premises. See Capozzi v. State, No. 3D23-1336, 2025 WL 1749327 (Fla. 3d DCA June 25, 2025) (reversing and remanding analogous condition with instructions to insert requirement that defendant not "knowingly visit" the prohibited places). Finally, it is clear that the portion of Condition 7 prohibiting the frequenting of any place where illegal drugs or alcohol are sold or distributed does not pass any of the three Biller considerations—it is unrelated to the offenses for which she was convicted, it does not relate to criminal conduct, and it does not forbid conduct that is reasonably related to future criminality.

Thus, the portion of Condition 7 requiring that S.M. "not frequent any place where illegal drugs or alcohol are sold or distributed" must be stricken. The striking of this provision does not give S.M. carte blanche to use illegal drugs or alcohol with

8

impunity because Condition 25, which prohibits S.M.'s use or possession of alcohol or illegal drugs, is an appropriate general condition of probation and remains in effect.

To the extent that S.M. also attacks the portion of Condition 7 that requires her to submit to random screens to determine usage, which requirement is essentially mirrored in Condition 25, we reject her argument. Testing for these substances is reasonably related to conduct that, under the facts of this case, would be criminal, and thus the testing condition is reasonably related to S.M.'s rehabilitation. See Villanueva v. State, 200 So. 3d 47, 53 (Fla. 2016) (observing that a condition is valid if it satisfies at least one of the Biller factors). Accordingly, we affirm the imposition of the conditions of probation allowing for testing.

In sum, we affirm the order finding S.M. guilty of the charged offenses and withholding the adjudication of delinquency but, because the face of the order contains a scrivener's error stating S.M. entered a no contest plea, we instruct the court on remand to amend the order to correctly reflect that S.M. was found guilty.[5] As for S.M.'s conditions of probation, we reverse and remand for the trial court to strike the portion of Condition 7 requiring that S.M. "not frequent any place where

---

[5] The trial court minutes reflect that S.M. was found guilty, and she stated in her Motion to Correct Disposition Error that she was found guilty.

9

illegal drugs or alcohol are sold or distributed." The remaining terms and conditions of probation are affirmed.

AFFIRMED in part; REVERSED in part; and REMANDED with instructions.

MIZE and GANNAM, JJ., concur.

Blair Allen, Public Defender, and Anthony C. Musto, Special Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Laura Dempsey, Assistant Attorney General, Tampa, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED